# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND DARDAR** | **CIVIL ACTION NO.:  16-13797** |
| **VERSUS** | |
| **T&C MARINE, LLC** | **SECTION: "H"(2)** |
| | **JUDGE JANE TRICHE MILAZZO** |
| | **MAGISTRATE JUDGE JOSEPH C. WILKINSON** |

## PRE-TRIAL ORDER

### 1.  PRE-TRIAL CONFERENCE

The Final Pre-Trial Conference in this matter will be held before the Honorable Judge Jane Triche Milazzo at 2:30 p.m. on August 17, 2017, in New Orleans, Louisiana.

### 2. APPEARANCES OF COUNSEL

C. Arlen Braud II, Michelle O. Gallagher and Steven D. Jackson for Plaintiff, Raymond Dardar.

S. Daniel Meeks and Phyllis E. Glazer for Defendant, T&C Marine, LLC.

### 3. DESCRIPTION OF PARTIES

Plaintiff, Raymond Dardar, is an individual of the full age of majority and domiciled in Cumberland County, State of Tennessee.

The Defendant, T & C Marine, L.L.C., is a Louisiana Limited Liability Company, which is the owner of M/V SHELBY COURTNEY and was the employer of the Plaintiff at the time of the alleged incident that purportedly occurred onboard M/V SHELBY COURTNEY and which alleged incident is the subject of this lawsuit.

#### 4.  JURISDICTION

Jurisdiction of this matter is conferred by 28 U.S.C. § 1333(1).  The alleged incident at issue in this matter occurred while Plaintiff was aboard a vessel that was upon navigable waters. Venue of this action is pursuant to 28 U.S.C. § 1391 (b) and (c).

#### 5. PENDING MOTIONS

##### PLAINTIFF

Plaintiff intends to file a motion *in limine* regarding his pharmacy of choice and additional motions *in limine* as warranted.

##### DEFENDANT

The Defendant anticipates filing Motions in Limine challenging the admissibility of certain exhibits which the Plaintiff intends to offer at trial.  Additionally, the Defendant anticipates filing Motions in Limine seeking to prevent counsel for the Plaintiff from referring to counsel for the Defendants as "insurance attorneys."  Finally, the Defendants anticipate filing a Motion to Strike to exclude the Plaintiff's demand for punitive damages as well as the brand new and unpled claim of liability *per se* under the Jones Act.

#### 6. SUMMARY OF MATERIAL FACTS

##### PLAINTIFF:

Plaintiff, Raymond Dardar, is 68 years old and has been working on the water since he was sixteen (16) years old.  He was hired as a captain by Defendant, T&C Marine, LLC, in April of 2013.  On or about May 23, 2016, Mr. Dardar was serving as the captain of the M/V SHELBY COURTNEY.  The SHELBY COURTNEY is a vessel owned by Defendant.  The SHELBY COURTNEY was operating with three crew members, two captains and one deckhand.  The vessel and crew were underway to a dive boat to offload and reload cargo.

The incident at issue occurred sometime in the morning, around 10-10:30 a.m., while the vessel was still underway to the dive boat.  Mr. Dardar asked the deckhand to hold the wheel while he went to grab a bite to eat before they reached the dive boat.  Mr. Dardar also advised the deckhand that he would perform the engine room check that is routine every 30-45 minutes.  The deckhand had been resting before he took over holding the wheel.  He and the other captain had been up most of the night running the vessel.

As he advised the deckhand, Mr. Dardar went to check the engine room.  To access the engine room from the galley, Mr. Dardar had to open a wooden door, then a water-tight door and step over the doorframe to enter the engine room.  Mr. Dardar had his right foot over the doorframe and into the engine room, and, as he was bringing his left foot over the lip of the frame, the wooden door slammed on his left foot, the door contacting the bottom of his foot and smashing the top of his foot into the doorframe he was attempting to step over.

Captain James P. Jamison, Mr. Dardar's expert, opined that Defendant failed to have a safety device on the wooden door to prevent it from slamming shut. Based on his experience on many different vessels over the years, Captain Jamison has witnessed safety devices installed to keep doors from slamming closed on someone. Captain Jamison will testify that, during his inspection with the vessel docked, he witnessed, from a little breeze, the door slam shut on its own. This verified for him that, with the vessel being underway and sea effects being stronger, this wooden door could slam while a crew member was trying to pass through it while exiting or entering the engine room. Captain Jamison will also testify that Mr. Dardar's performance of a task outside of his normal duties was an indicator of the M/V SHELBY COURTNEY lacking a proper crew.

Mr. Dardar expected the pain in his left foot to subside. It did not, however, and he reported the incident to his boss, Nacis Theriot, owner of T&C Marine. Although in a good deal of pain, Mr. Dardar agreed to stay on the vessel for several additional days to finish a job for his boss. When the job ended, Mr. Dardar requested medical attention.

Defendant set up an appointment for Mr. Dardar to be evaluated at Complete Occupational Health Services in Larose, Louisiana. Mr. Dardar underwent an X-ray of his left foot, and was referred to Dr. Jonathan Gisclair, a podiatrist, with an appointment for later that same day. Dr. Gisclair evaluated Mr. Dardar and diagnosed him with a bruised foot, provided him with a well-fitted fracture shoe and recommended that Mr. Dardar return for a follow-up in two weeks' time. Dr. Gisclair also noted that Mr. Dardar was displaying symptoms of peripheral arterial disease. Peripheral arterial disease, also referred to as peripheral vascular disease ("PVD"), results in decreased or lack of blood flow to extremities of the body. In his deposition, Dr. Gisclair testified that, based on the examination he performed and history he was provided by Mr. Dardar, the left foot pain and peripheral arterial disease symptoms were related to the incident wherein Mr. Dardar's foot was slammed in the door on the vessel. T&C Marine paid for Mr. Dardar's visits to Complete Occupational Health and Dr. Gisclair.

As he could not return to work, Mr. Dardar returned home to Tennessee. He tried several times to reach Mr. Theriot by phone and by text to get his medical treatment approved by the company. He treated with two podiatrists, Dr. Gerald Calia and Dr. Kimberly Wilkins, due to his continuing left foot pain. Dr. Wilkins ultimately diagnosed Mr. Dardar with peripheral vascular disease, which was affecting his left leg more than his right leg. Dr. Wilkins referred Mr. Dardar to a vascular surgeon. For some reason, Defendant steadfastly denied any authorization for payment for Mr. Dardar's medical care. It also never approved any maintenance payments.

Upon the recommendation and referral of Dr. Wilkins, Mr. Dardar began treating with Dr. Thomas Little at Tennessee Heart, PLLC. After examining Mr. Dardar and running diagnostic tests, Dr. Little recommended that Mr. Dardar undergo vascular surgery to increase the blood flow in his left leg. During his deposition, Dr. Little testified that, with the injury to Mr. Dardar's left foot and the lack of blood flow into his foot, Mr. Dardar was in danger of losing his foot by the time he began treating with Dr. Little. Dr. Little also testified that, unless blood is flowing properly into Mr. Dardar's foot, it may still be symptomatic now, and that it could remain symptomatic indefinitely until proper blood flow is restored to Mr. Dardar's foot.

3

On December 5, 2016, upon the recommendation of Dr. Little and due to his continuing left foot pain, Mr. Dardar underwent left femoral endarterectomy with bovine pericardial patch angioplasty and left iliac angioplasty and stenting using eight (8) millimeter self-expanding stents.  The surgery was performed by Dr. Timothy Powell.  Prior to the surgery, Mr. Dardar had no palpable pulse in his left foot.  After the surgery, Mr. Dardar was noted to have a good pulse in his left foot.  During his deposition, Dr. Powell testified that Mr. Dardar's PVD likely became symptomatic when his foot was smashed in the door aboard the vessel.  Dr. Powell also testified that Mr. Dardar's foot would be slower to heal because of the lack of proper blood circulation to his left foot.

Despite this clear medical evidence as to the on-going curative care that Mr. Dardar required and continues to require, Defendant has failed to meet its maintenance and cure obligation.  Other than payments for Mr. Dardar's initial treatments with Complete Occupational Health Services and Dr. Gisclair, Defendant has paid no cure.  To date, Defendant has made no maintenance payments to Mr. Dardar.  After this lawsuit was filed, Mr. Dardar, through counsel, made repeated requests and demands for Defendant to institute maintenance and cure payments.  Defendant has repeatedly denied Mr. Dardar's requests and demands.

Defendant's chosen medical expert, Dr. Claudie Sheahan, a vascular surgeon, examined Mr. Dardar on April 18, 2017.  Mr. Dardar reported to Dr. Sheahan that his left foot symptoms were improved after the surgery he underwent on December 5, 2016.  After her examination, Dr. Sheahan determined that Mr. Dardar's continuing foot symptoms were not consistent with rest pain (i.e., pain associated with PVD), and that she would presume that these symptoms are related to the foot trauma that he sustained.

Despite the mountain of medical evidence, and the report of its own chosen vascular surgeon, Defendant testified during its deposition that it still would not institute maintenance and cure payments.  With not even a scintilla of evidence supporting and backing Defendant's maintenance and cure determination, Mr. Dardar is left to infer that Defendant's denial is deliberate, willful and wanton, arbitrary and capricious.  As such, Mr. Dardar is seeking punitive damages and attorneys' fees against Defendant for its failure to pay maintenance and cure to him.

As for damages, Mr. Dardar's economist, Shael Wolfson, Ph.D., estimates that Mr. Dardar's past lost earnings total $72,054.  Dr. Wolfson estimates that Mr. Dardar's future loss of earnings total $213,883.  Dr. Wolfson also estimates that Mr. Dardar's total loss in benefits from his employer is $18,814.  To date, Plaintiff has incurred medical bills totaling $50,349.45.

**DEFENDANT:**

The Plaintiff, Raymond Dardar, a licensed and experienced vessel captain, served aboard M/V SHELBY COURTNEY as master of that vessel, for approximately three (3) years, including during the week he claims he injured his left foot when a door closed on it, and for approximately three (3) weeks after he claims to have injured his left foot. The Plaintiff was employed by the Defendant T & C Marine, L.L.C. [T & C].  T & C owns one vessel, M/V SHELBY COURTNEY, and has owned the vessel at all times pertinent hereto.

4

The Plaintiff was 67 years old at the time of the alleged incident.  He was receiving Social Security Retirement benefits at the time of the alleged incident and also qualified for Medicare Part A.  The Plaintiff began receiving Medicare Part B, medical and pharmacy benefits on July 1, 2016.

The Plaintiff was hired as a captain by T & C on April 3, 2013.  The Plaintiff was consistently employed by T & C Marine for approximately two and one-half (2 ½) years until October 16, 2015, when he was laid off due to a downturn in the oil and gas industry.  One of the primary duties of the Plaintiff as master of M/V SHELBY COURTNEY was to report any unsafe condition or procedures on the vessel so the unsafe condition or procedure could be remedied by the Plaintiff, or if necessary, by T & C hiring someone to correct the condition or procedure.

The Plaintiff was rehired and returned to his position as a captain aboard M/V SHELBY COURTNEY on Monday May 23, 2016.

Pursuant to its United States Coast Guard Certificate of Inspection, M/V SHELBY COURTNEY is authorized to operate with a three-person crew when the vessel "is away from a shoreside dock, or has passengers on board, or both, for not more than twelve (12) hours in any twenty-four (24) hour period."  At the time of the alleged incident in suit, M/V SHELBY COURTNEY was operating with a three-man crew consisting of two licensed captains and a deckhand.  At the time of the alleged incident, the vessel did not run in excess of six hours per day.

On or about June 20, 2016, the Plaintiff told Mr. Nacis Theriot, the owner of T & C that he had hurt his foot two (2) to three (3) weeks earlier, and he needed to go to the doctor.  Mr. Theriot sent the Plaintiff to Complete Occupational Health Services [COHS], who referred the Plaintiff to a podiatrist, Dr. Jonathan Gisclair.  Mr. Theriot approved further evaluation, and if necessary treatment, by Dr. Gisclair.  The medical bills of both COHS and Dr. Gisclair were paid, in full, by T & C.  Between June 20, 2016, and the filing of the instant lawsuit on August 12, 2016, the Plaintiff neither told Mr. Theriot he received additional medical treatment, nor requested payment of medical bills, or living expenses, that is, maintenance and cure, by T & C.

The Plaintiff was not injured onboard M/V SHELBY COURTNEY.  T & C ensured the Plaintiff received medical evaluations promptly based on the Plaintiff's word that he needed a medical evaluation.  No one witnessed the alleged incident.  The Plaintiff did not report the incident immediately and in writing as was his obligation as master of the vessel.  The Plaintiff continued to work for at least three weeks before requesting medical attention.  The Plaintiff took no steps to report or correct the allegedly dangerous condition.  Since T & C purchased M/V SHELBY COURTNEY, no one has ever been injured by the decorative door in the galley that allegedly slammed on the Plaintiff's foot.  On investigation into the Plaintiff's claim for maintenance and cure, which was <u>not</u> made until after suit was filed, it was revealed that the Plaintiff had no objective injury from the alleged incident.  On the contrary, the Plaintiff made only subjective complaints of left foot pain.  The Plaintiff did not provide a complete or accurate medical history to any of his medical providers.  The Plaintiff and his wife, made brazen attempts to prompt the Plaintiff's treating physicians to connect the alleged incident to the Plaintiff's vascular condition.  There is no dispute that the Plaintiff has severe peripheral arterial disease; but, the condition was not caused by the Plaintiff's service to the vessel, did not manifest onboard the vessel, and there is no evidence that the arterial disease affected an injury sustained onboard M/V SHELBY

COURTNEY because there is no evidence the Plaintiff suffered an injury onboard M/V SHELBY COURTNEY.

## 7. UNCONTESTED MATERIAL FACTS

1.  At all relevant times, Mr. Dardar was employed by Defendant, T&C Marine, LLC (hereinafter "T&C"), as a Jones Act seaman.

2.  At all relevant times, Mr. Dardar was a captain aboard the M/V SHELBY COURTNEY.

3.  At all relevant times, the M/V SHELBY COURTNEY was owned by Defendant, T&C.

4.  Pursuant to the Certificate of Inspection for the M/V SHELBY COURTNEY, the vessel was authorized to operate with a three-person crew when the vessel was away from a shore-side dock, or has passengers on board, or both, for not more than twelve (12) hours) in any twenty-four (24) hour period.

5.  At the time Mr. Dardar contends his left foot was injured, M/V SHELBY COURTNEY was operating with a three-man crew consisting of two captains and a deckhand.

6.  At the time Mr. Dardar contends his left foot was injured, the vessel and crew were underway, heading to a dive boat to offload and reload cargo.

7.  Mr. Dardar asked the deckhand to hold the wheel while Dardar went to grab a bite to eat before the vessel reached the dive boat.

8.  The engine room check is routine every 30-45 minutes.

9.  The routine engine room check was a part of the job of the deckhand.

10. The engine room on the M/V SHELBY COURTNEY is accessed from the galley/kitchen by opening a decorative wooden door, which swings into the galley, and then a water-tight door, which swings into engine room, and then stepping over a doorframe to enter the engine room.

11. T&C sent Mr. Dardar to Complete Occupational Health Services to be evaluated for pain in his left foot.

12. T&C paid for the visit to Complete Occupational Health Services.

13. Complete Occupational Health Services referred Mr. Dardar to Dr. Jonathan Gisclair, a podiatrist, for further evaluation of his left foot pain.

14. Dr. Jonathan Gisclair provided Mr. Dardar with a well-fitted fracture shoe.

15.     Dr. Jonathan Gisclair advised Mr. Dardar to return to his office for a follow-up in two weeks.

16.     T&C paid for the visit to Dr. Jonathan Gisclair's office, including the cost of the fracture shoe.

17.     T&C made no payments for cure after Mr. Dardar's visit to Dr. Jonathan Gisclair's office.

18.     T&C has never made any payments to Mr. Dardar for maintenance.

19.     Mr. Dardar treated with Dr. Gerald Calia, a podiatrist in Tennessee at Advanced Family Foot Care, complaining of left foot pain.

20.     Mr. Dardar treated with Dr. Kimberly Wilkins, a podiatrist in Tennessee at Family Foot Center, complaining of left foot pain.

21.     Mr. Dardar was referred to Tennessee Heart, PLLC by the Family Foot Center.

22.     Subsequent to the incident at issue, Mr. Dardar was diagnosed with plantar fasciitis in his left foot.

23.     On December 5, 2016, Mr. Dardar underwent a left femoral endarterectomy with bovine pericardial patch angioplasty and left iliac angioplasty and stenting using eight (8) millimeter self-expanding stents.

24.     Mr. Dardar has peripheral arterial disease in both his left and right legs.

25.     Mr. Dardar is a licensed vessel captain.

26.     The Plaintiff was hired by T & C on April 3, 2013, to serve as captain and master of M/V SHELBY COURTNEY.

27.     Captain and master of M/V SHELBY COURTNEY is the only position the Plaintiff held while employed by T & C.

28.     T & C owns only one vessel, M/V SHELBY COURTNEY, and T & C has owned that vessel at all times pertinent hereto.

29.     Mr. Dardar did not write an accident report of the alleged incident.

30.     On June 20, 2016, Mr. Dardar was first examined at Complete Occupational Health Services [COHS].

31.     At COHS, Mr. Dardar complained of left foot pain.

32.     Dr. Gisclair examined Mr. Dardar in the afternoon on June 20, 2016.

33.     After Dr. Gisclair examined Mr. Dardar on the afternoon of June 20, 2016, he gave the Plaintiff a well-fitted fracture shoe and recommended Mr. Dardar put ice on the affected area.

34.     When Dr. Gisclair examined the left foot of Mr. Dardar he did not find or observe any bruising or swelling of the left foot.

35.     The full amount of the bills of COHS and Dr. Gisclair were paid by T & C.


## 8. CONTESTED FACTS

1.      Whether, at the time at issue, the M/V SHELBY COURTNEY was running more than twelve (12) hours in a twenty-four (24) hour period.

2.      Whether the wooden door in the galley of the M/V SHELBY COURTNEY could or would slam shut.

3.      Whether the wooden door in the galley of the M/V SHELBY COURTNEY should have been equipped with a safety device to prevent it from slamming closed on someone.

4.      If the wooden door in the galley of M/V SHELBY COURTNEY could or would slam shut, whether the wooden door was equipped with a device that would have prevented the door from slamming closed on someone.

5.      Whether Captain James P. Jamison witnessed the wooden door slam shut during his inspection of the M/V SHELBY COURTNEY.

6.      If the wooden door in the galley of M/V SHELBY COURTNEY could or would slam shut, whether Defendant knew, or should have known, that the wooden door could slam closed on its own.

7.      If the wooden door in the galley of M/V SHELBY COURTNEY could or would slam shut, whether the Plaintiff knew, or should have known, that the wooden door could slam closed on its own.

8.      Whether Defendant knew, or should have known, that the wooden door could slam closed on its own.

9.      Whether Mr. Dardar's left foot was smashed between the wooden door and the door frame when the wooden door slammed shut.

10.     Whether Defendant breached a legal duty owed to Mr. Dardar.

11.     Whether Defendant provided Mr. Dardar a reasonably safe place to work.

12.     Whether the M/V SHELBY COURTNEY was properly staffed on the date of the incident at issue.

13.     Whether the wooden door in the galley of the M/V SHELBY COURTNEY was reasonably fit and safe for its intended purposes.

14.     Whether Mr. Dardar was injured and/or his illness became symptomatic while in the service of the M/V SHELBY COURTNEY.

15.     Whether Defendant's actions were a cause of Mr. Dardar's injuries.

16.     Whether Mr. Dardar's left foot pain/injury is causally related to the contact with the slamming wooden door.

17.     Whether Mr. Dardar reported to Nacis Theriot, the owner of T&C Marine, that his foot was slammed in a door on the vessel.

18.     Whether Mr. Dardar reported to Mr. Theriot that his left foot had been slammed in the metal watertight door to the engine room?

19.     Whether Mr. Dardar's peripheral vascular disease first became symptomatic while he was aboard the M/V SHELBY COURTNEY.

        ***The Defendant objects to this misstatement of the law by the Plaintiff. The issue is whether an illness "manifested" while onboard. "Manifestation" is a term of art that is not synonymous with "symptomatic."***

20.     Whether Mr. Dardar's peripheral vascular disease first became symptomatic due to the smashing of his foot aboard the M/V SHELBY COURTNEY.

21.     Whether the surgery Mr. Dardar underwent, specifically left femoral endarterectomy with bovine pericardial patch angioplasty and left iliac angioplasty and stenting using eight (8) millimeter self-expanding stents, on December 5, 2016 was necessitated by the incident at issue.

22.     Whether the plantar fasciitis in Mr. Dardar's left foot was causally related to the incident at issue.

23.     Whether the peripheral vascular disease that Mr. Dardar has subsequently been diagnosed with inhibited the healing process in his left foot.

24.     Whether Mr. Dardar was in danger of losing his left foot.

25.     Whether Mr. Dardar completely ignored the danger of losing his foot for over three months after being informed of the risk of limb loss by Dr. Gisclair.

9

26.     Whether Mr. Dardar continues to experience pain and discomfort in his left foot due to the incident at issue.

27.     Whether Mr. Dardar's quality of life has been diminished as a result of the incident at issue.

28.     Whether Mr. Dardar's mental/psychological condition has been worsened by the incident at issue.

29.     What Defendant's investigation into Mr. Dardar's demand for maintenance and cure entailed.

30.     Whether Defendant was willful and wanton in its denial of maintenance and cure payments.

31.     Whether Defendant acted arbitrarily and capriciously in denying maintenance and cure.

32.     Whether Defendant was *per se* negligent because it was operating the M/V SHELBY COURTNEY in violation of the twelve-hour rule, 46 U.S.C. § 8104.

   ***Defendant objects - this claim was not pled, is not supported by evidence, and should be stricken.***

33.     Whether Defendant was negligent because the M/V SHELBY COURTNEY was operating in violation of its Certificate of Inspection.

   ***Defendant objects - this claim was not pled, is not supported by evidence, and should be stricken.***

34.     Whether the M/V SHELBY COURTNEY was unseaworthy because it was operating in violation of its Certificate of Inspection.

   ***Defendant objects - this claim was not pled, is not supported by evidence, and should be stricken.***

35.     Whether the M/V SHELBY COURTNEY was *per se* unseaworthy because it was operating in violation of the twelve-hour rule, 46 U.S.C. § 8104.

   ***Defendant objects - this claim was not pled, is not supported by evidence, and should be stricken.***

36.     Whether Mr. Dardar's loss of wages between the accident date and trial is $72,054.

   ***Defendant objects – what accident date?***

37.   Whether Mr. Dardar's loss of benefits in the form of employer meal cost between the date of accident and the trial date is $4,745.

   ***Defendant objects – what accident date?***

38.   Whether Mr. Dardar's future wage loss without a return to gainful employment is $213,883.

39.   Whether Mr. Dardar's future loss of benefits in the form of employer meal cost is $14,069.

40.   Whether Defendant is liable for the medical bills/expenses incurred by Mr. Dardar totaling $50,349.45.

41.   Whether Mr. Dardar reported to Nacis Theriot, the owner of T&C Marine, that his foot was slammed in a door on the vessel.

42.   Whether, subsequent to the alleged incident at issue, Mr. Dardar was diagnosed with peripheral vascular disease ("PVD").

43.   Whether, prior to the alleged incident, Mr. Dardar received annual physical examinations.

44.   Whether there is no evidence that Mr. Dardar treated for complaints of left lower extremity, left foot or peripheral vascular disease pain prior to the incident at issue in this matter.

45.   Whether Mr. Dardar, through counsel, submitted 19 letters to Defendant, through counsel, asking and demanding that maintenance and cure payments be instituted.

   ***Defendant objects – a Motion in Limine is being filed regarding the correspondence from counsel for the Plaintiff to counsel for the Defendant***

46.   Whether a door slammed on the Plaintiff's left foot while onboard M/V SHELBY COURTNEY?

47.   Whether the Plaintiff injured his left foot while onboard M/V SHELBY COURTNEY?

48.   Whether the Defendant is liable for the payment of maintenance when the Plaintiff receives Social Security Retirement benefits?

   ***Plaintiff is filing a motion in limine is being filed related to this matter.***

49.   Whether the Defendant is liable for the payment of cure when the Plaintiff qualifies for and receives full Medicare benefits?

50.    Whether the Defendant is liable for the payment of cure for any medical treatment or prescription drug billed to the Plaintiff in an amount higher than the Medicare rate?

51.    Whether one of the primary duties the Plaintiff had as captain and master of M/V SHELBY COURTNEY was to supervise and manage the operation of the vessel, and upon observing an unsafe condition on the vessel, or seeing an unsafe work procedure or activity, to correct the unsafe condition or work procedure, and if he could not correct the condition or procedure, report unsafe condition or procedure immediately to T & C, so the condition or work procedure could be addressed and corrected.

52.    Whether it was the policy of T & C that any accident, injury, or illness suffered or occurring on M/V SHELBY COURTNEY, no matter how small, or insignificant was to be reported to the Captain immediately and the Captain would then write an incident report.

53.    Whether Mr. Dardar informed the deckhand that he would perform the engine room check.

54.    Whether there was a safety device in the galley of the M/V SHELBY COURTNEY that allowed the wooden door to be held open while someone entered or exited the engine room.

55.    Whether the deckhand had been resting before he took over the wheel because he and the other captain had been up most of the night running the vessel.

56.    Whether the Plaintiff did not report an accident or illness to the other captain who was onboard M/V SHELBY COURTNEY at the time of the alleged incident.

57.    Whether the Plaintiff told Mr. Nacis Theriot, the owner of T & C, that he had hurt his foot while serving on M/V SHELBY COURTNEY but he did not need medical treatment and refused to leave the vessel to obtain a medical evaluation.

58.    Whether the Plaintiff complained of left foot pain at the ball on the bottom of his left foot to Dr. Gisclair.

59.    Whether the Plaintiff was instructed to wear the well-fitted fracture shoe for two (2) to eight (8) weeks.

60.    If the Plaintiff ever wore the fracture shoe, whether he wore it for more than 10 days.

61.    Whether the wooden door leading from the galley/passenger area to the watertight door/entrance to the engine room slammed on the Plaintiff's left foot?

62.    Whether the Plaintiff suffered an injury to his left foot onboard M/V SHELBY COURTNEY?

63.     Whether any and all medical treatment needed to cure the injury to the left foot of the Plaintiff, allegedly sustained onboard M/V SHELBY COURTNEY was provided by COHS and/or Dr. Gisclair and paid for in full by T & C Marine.

64.     Whether the Plaintiff did not request payment for any medical or living expenses before he filed this lawsuit.

65.     Whether the Plaintiff worked full duty and was paid his full salary after the alleged incident.

66.     Whether the Plaintiff was a longtime tobacco smoker, has diabetes, and has hypertension which are all risk factors for peripheral arterial disease.

67.     Whether pain is only one of many visible symptoms of peripheral arterial disease. Other symptoms include skin changes, hair loss in the lower extremity, changes to the toenails, and rubor.

68.     Whether the Plaintiff has skin changes, hair loss, and changes to his toenails on both legs.

69.     Whether Mr. Dardar had peripheral arterial disease prior to the alleged incident.

70.     Whether peripheral arterial disease is incurable.

71.     Whether the blockages of arteries treated by the aforementioned surgery were located in the Plaintiff's hip/groin area.

72.     Whether plaque buildup in the arteries of the lower extremities is not caused by trauma to a lower extremity.

73.     Whether the Plaintiff gave incomplete and/or inaccurate medical histories to any or all of his medical providers.

## 9. CONTESTED ISSUES OF LAW

1.     Whether Defendant was negligent.

2.     Whether Defendant was *per se* negligent.

   ***Defendant objects - This claim was not pled, is not supported by evidence, and should be stricken.***

3.     Whether the M/V SHELBY COURTNEY was unseaworthy.

4.     Whether the M/V SHELBY COURTNEY was *per se* unseaworthy.

***Defendant objects - This claim was not pled, is not supported by evidence, and should be stricken.***

5.      Whether Mr. Dardar is entitled to maintenance and cure from Defendant.

6.      Whether Mr. Dardar is entitled to punitive damages from Defendant for willful and wanton, arbitrary and capricious disregard of its maintenance and cure obligation to Dardar.

7.      Whether Mr. Dardar is entitled to attorneys' fees from Defendant for willful and wanton, arbitrary and capricious disregard of its maintenance and cure obligation to Dardar.

8.      Whether the Defendant, T & C Marine, L.L.C., is obligated to pay maintenance and cure to the Plaintiff?

9.      Whether the Defendant, T & C Marine, L.L.C., is liable to the Plaintiff under the Jones Act or General Maritime Law?

10.     If T & C was obligated to provide the Plaintiff maintenance and cure, which is specifically denied, whether the Plaintiff did not follow recommended medical treatment, and in so doing, forfeited any claim he had for maintenance and cure.

11.     If T & C was obligated to provide the Plaintiff maintenance and cure, which is specifically denied, whether that obligation is extinguished or precluded under McCorpen.

12.     If T & C was obligated to provide the Plaintiff maintenance and cure, whether that obligation was limited or extinguished by the Plaintiff's receipt of Social Security Retirement benefits and Medicare benefits?

13.     Application of the "primary duty doctrine" applies to the claims of the Plaintiff in this matter.

14.     Whether the Plaintiff has a right of action or cause of action to recover medical expenses paid by Medicare.

15.     Whether the Plaintiff has a right of action or cause of action to recover medical expenses which were written down or written off in accordance with Medicare laws and regulations?

16.     All other issues of law raised or implicit in the foregoing contested issues of fact.
***The Defendant objects to the Plaintiff's vague and conclusory statement that there are additional issues of law "raised or implicit" in the listed issues of fact but which additional issues of law are not articulated herein.***

## 10. <u>EXHIBITS</u>

### <u>PLAINTIFF</u>

1.   Medical records and invoices from Complete Occupational Health Services, LLC. – RD-0108-0113

2.   Medical records and invoices from Dr. Jonathan Gisclair. – RD-0114-0115

3.   Medical records and invoices from Advanced Family Foot Care. – RD-0116-0140

4.   Medical records and invoices from Family Foot Center – Crossville. – RD-0141-0169

5.   Medical records and invoices from Tennessee Heart, PLLC. – RD-0170-0220

6.   Medical records and invoices from Cumberland Medical Center. – RD-0221-0236

7.   Invoices from Mula Family Pharmacy. – RD-0237-0245

8.   Medical records and invoices from Bako Integrated Physician Solutions. – RD-0246-0253

9.   Invoices from Vista Radiology. – RD-0254-0256

10.   Invoices from Daniel M. Haile, PLLC. – RD-0257

11.   Medical records and invoices from Dr. Luisa T. Manestar/Physicians' Associates, LLC. – RD-0258-0329

12.   Medical records and invoices from Cookeville Regional Medical Center. – RD-0330-0870

13.   Medical records and invoices from Middle Tennessee Surgical Specialists. – RD-0871-0881

14.   Invoices from Community Pathology. – RD-0882

15.   Invoices from Cookeville Regional Medical Group. – RD-0883

16.   Invoices from Cumberland Imaging Associates. – RD-0884

17.   Tax returns – Raymond Dardar. – RD-0009-0029

18.   Photographs of the M/V SHELBY COURTNEY. – RD-0030-0107

19.   Video of the M/V SHELBY COURTNEY.

20.    Text messages between Defendant and Mr. Dardar.

   ***The Defendant objects as these supposed text messages have not been produced and are hearsay.***

21.    Photographs of Mr. Dardar's foot shortly after the incident at issue. – RD-0885-0886

   ***The Defendant objects to these photographs as they are not dated and cannot be authenticated.***

22.    Raymond Dardar's personnel file. – RD-0887-0962

23.    M/V SHELBY COURTNEY USCG Certificate of Inspection and Amendment. – RD-0963-0966

24.    M/V SHELBY COURTNEY USCG Stability Letter. – RD-0967

25.    M/V SHELBY COURTNEY USCG Certificate of Documentation. – RD-0968

26.    Raymond Dardar's payroll/earnings records. – RD-0969-0973

27.    Raymond Dardar's Social Security Administration records.

28.    Correspondence asking/demanding maintenance and cure payments. – RD-0974-1002

   ***The Defendant objects to the admissibility of this correspondence or, alternatively requests leave to call the author of the correspondence as a witness and cross examine the author of each correspondence about the basis for each correspondence. These objections are more fully discussed in a Motion in Limine being filed by the Defendant on this issue.***

29.    Medicare lien.

   ***The Defendant objects to the admissibility of this document as has not been produced.***

30.    Any exhibits listed by Defendant, subject to and without waiving any stated objections.

31.    Any documents or depositions need for impeachment or rebuttal.

   **<u>DEFENDANT</u>**

1.    United States Coast Guard Certificate of Inspection of M/V SHELBY COURTNEY.

2.      Plaintiff's medical records and the paid invoice of Complete Occupational Health Services for the date June 20, 2016.

3.      Plaintiff's medical records and the paid invoice of Dr. Jonathan Gisclair for the date June 20, 2016.

4.      Medical Test Results and Opinion of Dr. Claudie Sheahan.

*Plaintiff objects – expert reports are not admissible as evidence.*

*Plaintiff further objects to any of Defendant's exhibits that have not been provided for review and as they have not been specifically identified.*

## 11.  DEPOSITION TESTIMONY

The parties shall, prior to trial, meet and agree as to the elimination of all irrelevant and repetitive matter and all colloquy between counsel. In addition, the parties shall, in good faith, attempt to resolve all objections to testimony so that the Court will be required to rule only on those objections to which they cannot reach an agreement as to their merit. As to all objections to the testimony which cannot be amicably resolved, unless otherwise ordered by the Court, the parties shall electronically file, not less than **three** days prior to trial, a statement identifying the portions objected to and the grounds therefor. Proponents and opponents shall furnish to the Court appropriate statements of authorities in support of their positions as to proposed testimony.

## PLAINTIFF

1.      Dr. Jonathan Gisclair.

2.      Marissa Diaz, PA-C.

3.      Dr. Kimberly Wilkins.

4.      Dr. Thomas Little.

5.      Dr. Timothy Powell.

6.      Dr. Gerald Calia.

## DEFENDANT

None.

## 12. <u>CHARTS, GRAPHS, MODELS, SCHEMATICS, DIAGRAMS</u>

**<u>PLAINTIFF</u>**

1.      Skeleton representative of the human body.

2.      Diagnostic films of Mr. Dardar's left foot.

3.      Calendar/timeline regarding maintenance and cure denial and medical treatment.

Plaintiff may use enlargements or overhead transparencies of any of the exhibits listed by in this Pre-Trial Order.  Plaintiff also reserves the right to use a whiteboard, easel, flipchart, computer projection, special monitors/screens or other similar demonstrative devices as appropriate during trial.

**<u>DEFENDANT</u>**

1.      The Defendant may also utilize a calendar or timeline regarding maintenance and cure requests and medical treatment.

2.      The Defendant may use enlargements or overhead transparencies of any of the exhibits listed by in this Pre-Trial Order.  The Defendant also reserves the right to use a whiteboard, easel, flipchart, computer projection, special monitors/screens or other similar demonstrative devices as appropriate during trial.

3.      The Defendant also reserves the right to use the Plaintiff's skeleton representative of the human body for demonstrative purposes.

## 13. <u>LIST OF WITNESSES</u>

Witness lists were filed in accordance with the Federal Rules of Civil Procedure and prior court orders.  No other witnesses shall be allowed unless agreeable to all parties and their addition does not affect the trial date.  This restriction shall not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated.  Furthermore, in the case of expert witnesses, counsel for all parties certify that they have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders.  Counsel acknowledge that expert witnesses whose reports have not been furnished to opposing counsel shall not be permitted to testify nor shall experts be permitted to testify to opinions not included in the reports timely furnished.

**<u>PLAINTIFF</u>**

**1.**      Raymond Dardar
115 Hood Drive
Crossville, TN 38555

Will provide fact testimony regarding the incident, the nature and extent of his injuries, as to his pain and anguish and his limitations as a result of the incident and his injuries.

2.    Judith Weiser
      115 Hood Drive
      Crossville, TN 38555

      Mrs. Weiser is Mr. Dardar's wife.  She will provide fact testimony regarding the nature and extent of Mr. Dardar's injuries, as to his pain and anguish and his limitations as a result of the incident and his injuries.

3.    Jeff Jordan
      Unknown                              -- ON CROSS

      Mr. Jordan was the other captain on the vessel on the date of the incident in question. He will provide fact testimony related to the operations aboard the M/V SHELBY COURTNEY, facts surrounding the incident at issue and his recollection of Mr. Dardar's physical condition before and after the incident at issue.

4.    Clint Curole
      1910 S. Bayou Drive                  -- ON CROSS
      Golden Meadow, LA 70357

      Mr. Curole was the deckhand on the vessel on the date of the incident in question. He will provide fact testimony related to the operations aboard the M/V SHELBY COURTNEY, facts surrounding the incident at issue and his recollection of Mr. Dardar's physical condition before and after the incident at issue.

5.    Nacis Theriot
      Individually and as Representative of T&C Marine, LLC
      1801 S. Bayou Drive                  -- ON CROSS
      Golden Meadow, LA 70357

      Mr. Theriot is the owner of T&C Marine, LLC.  He will provide fact testimony regarding the policies and procedures of T&C, the M/V SHELBY COURTNEY and its operations, facts surrounding the incident at issue and fact testimony regarding the decision to deny maintenance and cure to Mr. Dardar.

6.    Dr. Jonathan Gisclair
      128 W. 163rd Street
      Galliano, LA 70354

      Dr. Gisclair is a board certified podiatrist.  He will provide expert medical testimony related to the care and treatment for Mr. Dardar's foot injury, and the disabilities and limitations that he will have as a result of the injury.

7.    Marissa Diaz, PA-C/Representative of Complete Occupational Health Services
      Complete Occupational Health Services
      13554 Hwy 3235
      Larose, LA 70373

      Ms. Diaz is a certified physician's assistant.  She will provide medical testimony
      related to the care and treatment for Mr. Dardar's foot injury.

8.    Dr. Kimberly Wilkins
      Representative of Family Foot Center
      120 Walnut Commons Ln, Suite A
      Cookeville, TN 38501-6037

      Dr. Wilkins is a board certified podiatrist.  She will provide expert medical testimony
      related to the care and treatment for Mr. Dardar's foot injury, and the disabilities and
      limitations that he will have as a result of the injury.

9.    Dr. Thomas Little
      Representative of Tennessee Heart, PLLC
      228 W. 4th Street, Suite 200
      Cookeville, TN 38501

      Dr. Little is a board certified physician who specializes in cardiovascular diseases.
      He will provide expert medical testimony related to the care and treatment for Mr.
      Dardar's foot injury, arterial/vascular issues and other associated injuries, and the
      disabilities and limitations that he will have as a result of these injuries.

10.   Dr. Timothy J. Powell
      228 W. 4th Street, Suite 301
      Cookeville, TN 38501

      Dr. Powell is a board certified cardiac surgeon.  He performed a left femoral
      endarterectomy with angioplasty on Mr. Dardar.  He will provide expert medical
      testimony related to the care and treatment for Mr. Dardar's foot injury,
      arterial/vascular issues and other associated injuries, and the disabilities and
      limitations that he will have as a result of these injuries.

11.   Dr. Gerald Calia
      Advanced Family Foot Care
      162 Ridgeway Center
      Oak Ridge, TN 37830

      Dr. Calia is a board certified podiatrist.   He will provide expert medical testimony
      related to the care and treatment for Mr. Dardar's foot injury, and the disabilities and
      limitations that he will have as a result of the injury.

12.  Dr. Claudie Sheahan
     1542 Tulane Avenue, Room 734                -- ON CROSS
     New Orleans, LA 70112

     Dr. Sheahan is a board certified vascular surgeon.  She will provide testimony related to her examination of Mr. Dardar.

13.  Shael N. Wolfson, Ph.D.
     James R. Bartkus, Ph.D.
     1050 S. Jeff Davis Pkwy., Ste. 230
     New Orleans, LA  70125

     Dr. Wolfson is an economics professor.  He will provide expert testimony regarding the economic impact on Mr. Dardar, including his past and future lost wages and lost benefits.

14.  Captain James P. Jamison
     220 South College Street
     Marion, KY 43064

     Captain Jamison is a Coast Guard licensed captain of any gross ton vessel.  He will provide expert testimony regarding the standards of care and/or laws/rules/regulations applicable to the vessel upon which Mr. Dardar suffered his accident and injury, the seaworthiness of the vessel and whether Defendant's actions in any way contributed to Plaintiff's injuries.

15.  Any and all other witnesses listed by any other party.

16.  Any witnesses needed to authenticate any exhibit.

17.  Any witnesses needed for impeachment or rebuttal purposes.

## **<u>DEFENDANT</u>**

1.  A representative of T&C Marine, LLC, Defendant;

2.  Clint Curole may be called to testify as a fact witness from personal knowledge of facts regarding the date of the alleged incident including whether the Plaintiff told him he had allegedly injured himself, and the circumstances surrounding Mr. Curole manning the wheel of M/V SHELBY COURTNEY.

3.  Dr. Claudie Sheahan, will be called to testify as expert witness in vascular surgery and diseases or conditions affecting the vascular system;

4.  Captain Jeff Jordan, may be called to testify as a fact witness from personal knowledge of facts regarding the date of the alleged incident including whether the Plaintiff told

him he had allegedly injured himself, and the circumstances surrounding Mr. Curole manning the wheel of M/V SHELBY COURTNEY;

5.      Mrs. Judith Weiser Dardar, the Plaintiff's wife, may be called as a fact witness on cross examination to testify regarding the Plaintiff's past medical history, medical treatment, communications with the Plaintiff's treating physicians, and other matters related to her husband, his claim and his medical condition.

## 14.  JURY OR NON-JURY CASE

All aspects of this case will be tried before a jury in the United States District Court with the Honorable Judge Jane Triche Milazzo presiding.  Proposed jury instructions, special jury interrogatories, and trial memoranda shall be electronically filed with the Court not later than **five** working days prior to the trial date; and any special questions that the Court is asked to put to prospective jurors on voir dire shall be electronically filed with the Court not later than **five** working days prior to the trial date unless specific leave to the contrary is granted by the Court.

A trial memorandum shall be required only when and to the extent ordered by the Court. However, any party may in any event file such memoranda not less than **five** working days prior to trial and should accomplish this with respect to any anticipated evidentiary problems which require briefing and jury instructions requiring explanation beyond mere citation to authority.

## 15.  DAMAGES

The issue of liability will not be tried separately from that of quantum.

## 16.  OTHER MATTERS

None at this time.

## 17.  COMMENCEMENT OF TRIAL

The trial shall commence on September 11, 2017 at 8:30 a.m.  Counsel for both Plaintiff and Defendant estimate the length of trial to be 4 days.

## 18.  STATEMENT REGARDING CONFERENCE OF COUNSEL

This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest justice.

### 19.  <u>STATEMENT REGARDING POSSIBILITY OF SETTLEMENT</u>

The possibility of settlement of this case was considered.  A settlement conference was held before the Honorable Joseph C. Wilkinson on May 2, 2017.  The parties were unable to reach a settlement.

**SIGNED** this _____ day of August, 2017, in New Orleans, Louisiana.

_____

**HONORABLE JANE T. MILAZZO**
**UNITED STATES DISTRICT JUDGE**

**By Attorneys:**

Respectfully submitted:

*/s/ C. Arlen Braud, II*_____
**C. ARLEN BRAUD, II, #20719**
**MICHELLE O. GALLAGHER, #23886**
**STEVEN D. JACKSON, #35841**
BRAUD & GALLAGHER, L.L.C.
111 N. Causeway Blvd., Ste. 201
Mandeville, Louisiana 70448
Telephone:     (985) 778-0771
Facsimile:      (985) 231-4663
arlenb@braudandgallagher.com
michelleg@braudandgallagher.com
stevenj@braudandgallagher.com
**Counsel for Plaintiff, Raymond A. Dardar**

*/s/ Phyllis E. Glazer*_____
**S. DANIEL MEEKS, #9407 (T.A.)**
**PHYLLIS E. GLAZER, #29878**
MEEKS & ASSOCIATES, LLC
3401 West Esplanade Avenue, South, Suite 3
Metairie, Louisiana 70002
Telephone:     (504) 355-0020
Facsimile:      (504) 355-0024
Email:DMeeks@MeeksLawLLC.com
          PGlazer@MeeksLawLLC.com
**Counsel for Defendant, T&C Marine, LLC**

23