UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAYMOND DARDAR** | * | **CIVIL ACTION** |
| | * | |
| | * | **NUMBER: 16-13797 (H)(2)** |
| versus | * | |
| | * | **DISTRICT JUDGE MILAZZO** |
| **T&C MARINE, LLC** | * | |
| | * | **MAGISTRATE JUDGE WILKINSON** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES**

**MAY IT PLEASE THE COURT:**

The Defendant, T & C Marine, LLC, [T & C Marine] herein respectfully opposes the amount requested by the Plaintiff in his Motion for Attorneys' Fees. Rec. Doc. 80. T & C Marine separately moved for Judgment as a Matter of Law, or Alternatively, for a New Trial on the award of attorneys' fees by the jury. Rec. Doc. 83. Without waiving any argument regarding why the Plaintiff is not entitled to recover any attorney's fees at all, T & C Marine herein opposes only the amount requested.

**I.   Legal Standard**

The lodestar applies in this case for calculating a reasonable fee.

> In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award. *See Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011). The court must first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id*. In calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented."

> *Id.* at 379–80. Though the lodestar is presumed reasonable, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), the court may enhance or decrease it based on the twelve *Johnson* factors, *see Jimenez*, 621 F.3d at 380. "The court must provide 'a reasonably specific explanation for all aspects of a fee determination.' " *Id.* (*quoting Perdue*, 559 U.S. at 558, 130 S.Ct. 1662).

*Combs v. City of Huntington, Texas*, 829 F.3d 388, 391–92 (5th Cir. 2016). Counsel for the Plaintiff did not request an enhancement of the lodestar. Therefore, it is unnecessary to consider the *Johnson* factors in this case.[1]

## II.   The rates requested by counsel for the Plaintiff should be reduced.

The Plaintiff requested the rate of $350 per hour for lead counsel, C. Arlen Braud, and for Mr. Braud's law firm partner, Michelle Gallagher. The Plaintiff requested the rate of $225 per hour for Steven Jackson, an associate at the Braud and Gallagher law firm. For the following reasons, the rate of Mr. Braud should be reduced from $350 to $250 per hour; the rate of Ms. Gallagher should be reduced from $350 to $200 per hour; and the rate of Mr. Jackson should be reduced from $225 to $175 per hour.

In the Fifth Circuit, a reasonable hourly rate is derived by "consider[ing] the attorneys' regular rates as well as prevailing [market] rates." *Coves of the Highland Cmty. Dev. Dist. v. McGlinchey Stafford, P.L.L.C.*, No. CIV.A. 09-7251, 2012 WL 174477, at *2 (E.D. La. Jan. 20, 2012) (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.2d 319, 324, 328 (5th Cir. 1995)).

---

[1] The Supreme Court in *Perdue*, "limited such enhancements to three rare and exceptional circumstances, all of which 'require specific evidence that the lodestar fee would not have been adequate to attract competent counsel.'" *Combs, supra* (quoting *Perdue*, 559 U.S. at 554-55, 106 S.Ct. 3088) (additional internal quotation marks and citation omitted). No such evidence was offered in this case.

2

> In determining the prevailing market rate for these purposes, locale alone is not determinative; the Court must also endeavor to compare the requested rates to those prevailing in the relevant legal market "… for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum* [*v. Stenson*, 465 U.S. 886, 895, n.11 104 S.Ct. 1541, 1547 n.11 (1984)]. Indeed, "considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Perdue*, 559 U.S. at 553, 130 S.Ct. at 1673 (internal quotation omitted).
>
> The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *NAACP v. City of Evergreen, Alabama*, 812 F.2d 1332, 1338 (11th Cir. 1987). Such satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and, if available, information on rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. However, mere testimony that a given fee is reasonable is not satisfactory evidence of market rate. See *Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. at 1942 n. 15.

*St. Joseph Abbey v. Castille*, No. CIV.A. 10-2717, 2015 WL 3444897, at *6 (E.D. La. May 27, 2015).

All three attorney-applicants submitted Declarations (Rec. Doc. 80-2 (Declaration of Mr. Braud), 80-3 (Declaration of Ms. Gallagher), and 80-4 (Declaration of Mr. Jackson)) in which each briefly states when he or she graduated from law school and was licensed, and how long he or she has been practicing law and specializing in the field of maritime and Jones Act law. See Paragraph 2 of each Declaration. Furthermore, each declares "Based on my experience and the average rate for other attorneys in the New Orleans area

with equivalent experience, I believe [my requested hourly rate] is a reasonable hourly billing rate." See Paragraph 3 of each Declaration.

Each attorney-applicant also declares that he or she "believes" the rates of the other two applicants are reasonable based on when they graduated from law school. See Paragraph 4 of each Declaration. None of the attorney-applicants declares that the rates requested in this case are the customary rates they normally charge in similar matters. See *St. Joseph Abbey, supra,* quoting *Blum, supra.*

**Mr. Braud's rate should be reduced from the requested $350 per hour to $250 per hour; Ms. Gallagher's rate should be reduced from the requested $350 per hour to $200 per hour; and Mr. Jackson's rate should be reduced from $225 per hour to $175 per hour.**

Mr. Braud was the lead counsel in this matter. He graduated from law school in 1991 and has been practicing in the areas of maritime and Jones Act law since 1991. Rec. Doc. 80-2. Mr. Braud admitted during closing argument at trial that the Original Seaman's Complaint contained material factual errors and "meaningless," numbers as estimates of the values of the Plaintiff's Jones Act negligence and unseaworthiness claim ($2,000,000.00) and maintenance and cure claim ($100,000.00). Mr. Braud admitted the Complaint was basically a form which he did not read before it was filed.

Ms. Gallagher attended the trial of this matter during which she cross examined one witness. The work performed by Ms. Gallagher, attending and reviewing depositions and cross-examination of a single witness at trial, could have and should have been performed by Mr. Jackson, the associate of the Braud and Gallagher law firm who performed the majority of work on the

4

Plaintiff's case. The fact that Ms. Gallagher is a named partner in the law firm of Braud and Gallagher does not replace the fact that Ms. Gallagher has been practicing less than 20 years and did the work of an associate in this matter. Therefore, Ms. Gallagher should not recover the rate of a senior partner but, rather, that of a junior partner with less than twenty years of experience. Her requested rate should be reduced from $350.00 per hour to $200.00 per hour.

Finally, Mr. Jackson, the associate attorney, has been licensed to practice law for seven years, Rec. Doc. 80-3, has only been licensed in Louisiana for three and one-half years, and has only been practicing maritime law for approximately two years. *Id.* Presumably due to inexperience, Mr. Jackson performed the role of a law clerk or first or second year associate: he drafted correspondence and discovery, prepared motions and memoranda which were then argued by Mr. Braud, and attended a single deposition. Due to inexperience and the corresponding role performed throughout this matter, Mr. Jackson should not recover the hourly rate of a seventh-year associate but, rather, the rate of a second or third year associate. Therefore, Mr. Jackson's requested rate of $225 per hour should be reduced to $175 per hour.

Unlike counsel for the Plaintiff who offered no independent evidence of what reasonable market rates are for Plaintiff's counsel in the New Orleans Area with similar experience and in similar cases, the Defendant hereby attaches two Declarations Under Penalty of Perjury of Ms. Shirley Bickford and Mr. Dustin Goodwin, which have been marked as Exhibits 1 and 2 respectively. Counsel for the Plaintiff is aware, as he mentioned it during his closing

argument much to the chagrin of the undersigned who had filed a successful *motion in limine* on the issue, the Defendant has insurance. Ms. Bickford and Mr. Goodwin are adjusters of maritime litigation claims who have each had over a decade of experience adjusting claims like the instant case. In fact, Ms. Bickford is the adjuster assigned to the instant claim. However, unlike counsel for the Plaintiff who each submitted self-serving Declarations in support of their personal requests for money, Ms. Bickford has no actual interest in the outcome of the Plaintiff's Motion. Mr. Goodwin is similarly disinterested. The absence of unbiased evidence from the Plaintiff's submission is noteworthy. See *Williams v. Traylor-Massman-Weeks, LLC*, No. CV 10-2309, 2013 WL 12228480, at *4 (E.D. La. Aug. 30, 2013), report and recommendation adopted in part, rejected in part, No. CIV.A. 10-2309, 2013 WL 5603953 (E.D. La. Oct. 11, 2013) (citing *Sanders v. Washington Mutual Home Loans, Inc.*, Nos. 05–2166, 06–1996, 2009 WL 365683, at *7 (E.D. La. Feb. 10, 2009)("The Court also notes that Shaw has failed to submit an Affidavit from a disinterested attorney which might indicate that the rates are reasonable—an omission whose materiality is not lost on other courts.").

The cases from the Eastern District of Louisiana, including those cited by counsel for the Plaintiff, support awards of $250 per hour for Mr. Braud, $200 per hour for Ms. Gallagher, and $175 per hour for Mr. Jackson.

The first case cited by the Plaintiff is *Constr. S., Inc. v. Jenkins*, No. CIV. A. 11-1201, 2011 WL 3882271, at *2 (E.D. La. July 29, 2011), *report and recommendation adopted*, No. CIV.A. 11-1201, 2011 WL 3892225 (E.D. La.

6

Sept. 2, 2011). That case awarded attorney's fees and costs as a sanction against the defendant for frivolously removing the case from state to federal court. *Id* at *1. In *Jenkins*, Magistrate Judge Knowles reduced the requested rates of two attorneys who each had at least thirty years of experience. The Court ultimately concluded that $350 per hour was a reasonable rate for partners in a major law firm who each had *thirty-plus years of experience practicing law*. *Jenkins* supports a reduction in the rates requested by counsel for the Plaintiff.

The second case cited by the Plaintiff, *Foley v. SAFG Retirement Services, Inc.*, No. CIV.A. 10-2827, 2012 WL 956499, at *1 (E.D. La. Mar. 20, 2012), involved an award of attorney's fees as a civil contempt penalty for failure to comply with discovery orders. In *Foley*, like in *Jenkins*, Magistrate Judge Knowles reduced the requested hourly rates of counsel and awarded $350.00 per hour to a partner at a major law firm who had over thirty years of experience.

The third case cited by the Plaintiff *is Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, No. CIV.A. 10-4151, 2014 WL 5039670, at *8 (E.D. La. Sept. 25, 2014), which is another case in which Magistrate Judge Knowles reduced the requested hourly rate of counsel. Offshore Marine was also factually distinguishable from the instant case in that Offshore Marine did not involve a seaman's claim for maintenance and cure. Attorney's fees were awarded pursuant to a relevant contract. Magistrate Judge Knowles awarded $325 per hour to lead counsel who had nineteen years of relevant experience.

However, "The Court specifically recognizes that these hourly rates are at the higher end of the spectrum in this district. However, the Court also recognizes the tremendous effort expended by counsel in defending against and prosecuting claims during three years of litigation in this lawsuit." *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC,* No. CIV.A. 10-4151, 2014 WL 5039670, at *8 (E.D. La. Sept. 25, 2014).  Of the cases cited in *Offshore Marine,* the only case that awarded more than $300 per hour to a partner was the *Jenkins* case which, as discussed above, is distinguishable from the instant case.

As noted above, counsel for the Plaintiff did not offer any evidence about what their normal billable rates are or any independent evidence of what the reasonable rates are in the New Orleans area for attorneys of similar experience and expertise in comparable litigation.  Absent such evidence, the conclusory statements of each attorney regarding the reasonableness of their rates, should not be accepted as prima facie evidence of the reasonableness of the requested rates.

Defendant's Exhibits 1 and 2, the Declarations of Ms. Bickford and Mr. Goodwin establish that reasonable rates in New Orleans in a case like this would range from $150-$175 for Mr. Jackson, an associate with between five and fifteen years of experience; $175 to $200 per hour for Ms. Gallagher, a junior partner with fewer than twenty years of experience; and $250 to $265 per hour for Mr. Braud, senior partner with fewer than thirty years of experience.  Ms. Bickford and Mr. Goodwin have personal experience fixing

hourly rates and paying attorneys in the New Orleans Area who have every level of experience. Although the sections and divisions within the Eastern District may, on cursory glance, appear to have awarded amounts similar to those requested by counsel for the Plaintiff, one major distinction among each case is the type of case, difficulty of the issues, and even whether or not the case was tried by a judge or jury. The factual differences in the circumstances of the litigation among the various cases in which attorney's fees are awarded explains the wide ranges of awards. The absence of independent evidence from the Plaintiff's submission is exacerbated by the absence of a declaration from counsel for the Plaintiff that the rates they request in the instant case are commensurate with the rates they normally charge in similar cases.

In light of the foregoing and particularly the ranges of rates identified by the two declarants with unique insight into the actual market rates of attorneys in the New Orleans area, the Defendant requests the attorneys' requested rates be reduced as follows: Mr. Braud from $350 to $250 per hour; Ms. Gallagher from $350 to $200 per hour; and Mr. Jackson from $225 to $175 per hour. Those rates are supported by the cases cited by the Plaintiff as well as by the following cases. In *Carrier v. Weber Prop. Grp., L.L.C.*, No. CV 16-6648, 2017 WL 4232535, at *4 (E.D. La. June 14, 2017), report and recommendation adopted, No. CV 16-6648, 2017 WL 4226161 (E.D. La. Sept. 21, 2017), the Court awarded $275 per hour for lead counsel and $150 per hour for his associate. In support of those reasonable rates, the Court cited the following cases.

*Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.*, No. 15-5265, 2017 WL 736044, at *2 (E.D. La. Feb. 24, 2017), aff'd, 2017 WL 2274954 (E.D. La. May 25, 2017) (using lodestar method for discovery sanction and awarding hourly rates of $300, $240, $210 and $190 for attorneys with 17, 10, 4 and 1 years of experience, respectively); *Warder v. Shaw Grp., Inc.*, No. 09-4191, 2016 WL 3447950, at *2-3 (E.D. La. June 23, 2016) (using lodestar for discovery sanction and awarding hourly rates of $325 for partner with 14 years of experience, $300 for associate who nonetheless had 20 years of experience in complex commercial litigation and $130 for paralegal); *Banegas v. Calmar Corp.*, No. 15-593, 2016 WL 6276779, at *2 (E.D. La. Oct. 27, 2016) (awarding $250 per hour for Fair Labor Standards Act work to the same attorneys as in *Calix v. Ashton Marine LLC*, No. 14-2430, 2016 WL 4194119, at *5 (E.D. La. July 14, 2016), report & recommendation adopted, 2016 WL 4180977 (E.D. La. Aug. 8, 2016), in which this court awarded $200 per hour for attorneys who had practiced for 5 years, but had little experience litigating FLSA cases); *Hobson v. Abe Dev. LLC*, No. 15-1480, 2016 WL 4592170, at *2 (E.D. La. Sept. 2, 2016) (hourly rates of $250 and $275 in civil rights case to lawyers with "roughly ten years of experience"); *Gahagan v. U.S. Customs & Border Prot.*, No. 14-2619, 2016 WL 3090216, at *14 (E.D. La. June 2, 2016) ($200 per hour for attorney with 8 years of experience in immigration and Freedom of Information Act cases); *Loiacano v. DISA Global Solutions*, No. 14-1750, 2016 WL 2926679, at *2 (E.D. La. May 19, 2016) (denying requested hourly rates of $630 and $435 for partners and $347 for an associate, and awarding $350 for partners, $205 for associate and $150 for paralegal as discovery sanction); *Cacho v. Gusman*, No. 11-225-SS, 2014 WL 4854737, at *6 (E.D. La. Sept. 29, 2014) (in civil rights action, awarding hourly rates of $185 for attorney with 11 years of experience and $150 for attorneys in practice for 3 to 5 years); *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, No. 10-4151, 2014 WL 5039670, at *8 (E.D. La. Sept. 25, 2014) ($325, $275 and $225 per hour for attorneys with 19, 7 and 4 years of experience, respectively, in breach of contract case); *Guity v. Lawson Envtl. Serv., LLC*, No. 11-2506,

10

> 2014 WL 4723295, at *6-8 (E.D. La. Sept. 23, 2014) (hourly rates of $250 to $290 for partners and $150 to $175 for associates in indemnity case).

*Carrier v. Weber Prop. Grp., L.L.C.*, No. CV 16-6648, 2017 WL 4232535, at *4.

Considering the lack of evidence presented by counsel for the Plaintiff as well as the foregoing cases, the rates of Mr. Braud, Ms. Gallagher, and Mr. Jackson should be reduced to $250 per hour, $200 per hour, and $175 per hour respectively.

### III. Number of Hours billed

Counsel for the Plaintiff must also prove the reasonableness of the number of hours they are claiming.

> [P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002). Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. *Id.*; *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002). The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Walker*, 313 F.3d at 251 (citing *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)).

*Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The Plaintiff did not submit evidence of the hours billed and the hours written-off. Instead, each attorney seeking fees declared:

> Braud & Gallagher wishes to be reasonable and fair in seeking fees. To that end, we have cut the hours that were billed to this matter to eliminate redundancy, while still recognizing that every member of the pre-

11

> trial and trial team played a unique and critical role. Nonetheless, for example, meetings, for billing purposes, have been reduced to one participant and, though all team members reviewed various file documents, only one team member may be listed as having reviewed said documents. This represents only a decision to exercise billing judgment. Further, not every telephone call, e-mail or meeting regarding this case has been included in this itemization.

See Paragraph 7 of each declaration; Rec. Doc. 80-2, 80-3, and 80-4. The declarations of counsel do not state that the billing was kept contemporaneously with the work performed, or that the billing was conducted using the same methods regularly utilized by attorneys in the firm of Braud and Gallagher.

In addition to the foregoing examples of how to exercise billing judgment, counsel for the Plaintiff should have declared and offered documentary evidence showing they only submitted a bill for attorneys' fees incurred in collecting maintenance and cure. The Plaintiff's lawsuit sought two million dollars ($2,000,000.00) in personal injury damages under the Jones Act for alleged negligence of T & C Marine and/or for alleged unseaworthiness of M/V SHELBY COURNTEY, the vessel on which the Plaintiff served as captain. The Plaintiff prosecuted the Jones Act negligence and unseaworthiness claims through trial. The Jury found in favor of the Defendant on both the Plaintiff's Jones Act and unseaworthiness claims. Regardless, the Plaintiff cannot, as a matter of law, recover attorney's fees for the prosecution of any claim other than the claim for maintenance and cure. See *Harper v. Zapata Off-Shore Co.*,

741 F.2d 87, 90 (5th Cir. 1984) (citing *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)).

The attorneys did not declare that hours spent on the Jones Act negligence and unseaworthiness claims were removed from the bill submitted to the Court and a review of the bill submitted, Rec. Doc. 80-5, clearly contains time entries related to those claims or which were clearly not specific to the maintenance and cure claim. See e.g. Rec. Doc. 80-5, p. 2, (3/20/2017 entry by Steven Jackson [SDJ] for researching lost wages and the necessity of retaining an economist); p. 3, (5/11/2016 entry by Arlen Braud [CAB] for reviewing the Defendant's proposed Motion for Sanctions). Many of the entries, most notably the entries for attendance at trial, apply to all three claims.

The Defendant respectfully suggests that hours obviously spent on the Jones Act negligence and/or unseaworthiness claims be stricken, and that the hours not clearly limited to the prosecution of the maintenance and cure claim be reduced by a percentage. If the percentage reduction reflects the estimated values of the claims the Plaintiff included in his Original Seaman's Complaint, rec. doc. 1, and incorporated into his Amended Seaman's Complaint, rec. doc. 21, then the number of hours should be reduced by 95% because the Plaintiff valued the Jones Act negligence and unseaworthiness claims at $2,000,000.00 and the maintenance and cure claim at $100,000.00.

Counsel for the Plaintiff admitted, during closing argument, that the numbers pled in the Original Seaman's Complaint were "meaningless numbers," which were formulaic and not reflective of the facts as known as of

13

the time of trial. If this Honorable Court finds a different percentage reduction is appropriate, the Defendant suggests that the hours submitted be reduced by two-thirds. A two thirds reduction would indicate that each of the three claims which the Plaintiff brought to trial: the Jones Act negligence, unseaworthiness, and maintenance and cure claims, were equally prosecuted one-third, one-third, and one-third. This Honorable Court has vast discretion in the method used for reducing an attorney's bill which contains non-compensable hours. See e.g. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983) ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."). The Defendant suggests the foregoing combined method of striking obviously non-compensable hours followed by an overall percentage reduction as a straightforward and simple method for calculating the reasonable number of hours expended on this litigation. *See Carrier v. Weber Prop. Grp., L.L.C.*, No. CV 16-6648, 2017 WL 4232535, at *4 (E.D. La. June 14, 2017), *report and recommendation adopted,* No. CV 16-6648, 2017 WL 4226161 (E.D. La. Sept. 21, 2017) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)) (Trial courts "'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is).").

**IV.    Specific Hours Challenged:**

On the attached chart, the Defendant adjusted the hours billed by counsel for the Plaintiff and re-calculated the total in light of the suggested adjustments to the requested hourly rate of each attorney requesting attorney's fees. The Defendant also numbered the lines of each billing entry and will refer to those line numbers when discussing below the adjustments to the hours submitted by counsel for the Plaintiff.

The following entries were stricken. Line 42, March 20, 2017 entry by Mr. Jackson for research on lost wages and the necessity of an economist, was stricken because that task was specific to the compensatory damages sought in the Jones Act negligence and unseaworthiness claims. Line 43, April 4, 2017 entry by Mr. Jackson for retaining Capt. J. P. Jamison as a marine safety expert was stricken because Capt. Jamison's opinions and testimony were exclusively related to the Jones Act negligence and unseaworthiness claims. Similarly, Lines 76-78, 83-84, 86, 98, 111-114, 120-123, 126, 128, and 132 were stricken because they pertain to the expert witnesses retained by the Plaintiff to support his Jones Act negligence and unseaworthiness claims and corresponding request for compensatory damages.

The entries in lines 117-118, were for July 18, 2017, research and motion drafting by Mr. Jackson regarding de bene esse depositions. That motion was never filed; thus, the entries were stricken. The entries at Lines 176-180 and 183-186 were stricken because they pertain to a Motion in Limine

which was about the Plaintiff's Jones Act Negligence and unseaworthiness claims as well as a Motion to Seal that Motion in Limine which was denied.

Line 45, April 4, 2017, entry by Mr. Jackson for an email exchange with counsel for the Defendant regarding filing a motion to amend and extend deadlines was stricken because the Plaintiff amended the Complaint to correct facts which were pleaded in the Original Complaint in violation of Rule 11, not to further the claim for maintenance and cure. Similarly, Lines 50, 54-55, 59, 73, 74, and 79-81 were stricken because they were further entries regarding the Motion to Amend and Extend Deadlines.

Entries at lines 97 and 99-101 were entries from June 16, 2017, pertaining to Plaintiff's witness and exhibit lists. Those entries were stricken because the only witness that supported the Plaintiff's maintenance and cure claim was the Plaintiff himself and the only evidence offered to support the maintenance and cure claims was correspondence by counsel for the Plaintiff to counsel for the Defendant demanding maintenance and cure which was not listed as an exhibit on the Plaintiff's exhibit list (rec. doc. 26) until the pretrial order was filed on August 14, 2017 (rec. doc. 45). In other words, the witness and exhibit list prepared in June, 2017, only pertained to the Plaintiff's claims for Jones Act negligence and unseaworthiness.

Line 124 was a July 20, 2017 entry by Mr. Jackson for research expressly on the Jones Act negligence and unseaworthiness claims; so that entry was stricken. Similarly, Line 175 was an entry for researching the collateral source rule which does not apply in the maintenance and cure claim.

Lines 141-143 were stricken because they were August 1, 2017 entries by Mr. Braud regarding the Defendant's attempts to locate records regarding worker's compensation benefits and social security disability benefits which benefits were deemed inadmissible for all purposes, including the claims for maintenance and cure.

Lines 161 and 167 are August 9 and 10, 2017, entries by Mr. Jackson for organizing and bates labeling trial exhibits which is fundamentally clerical work. Therefore, those entries were stricken.

Line 237 was a January 17, 2018 entry by Mr. Jackson for reviewing all of the trial exhibits and removing narrative reports from the medical records. This entry was stricken because the Plaintiff did not inform the Defendant he planned on removing any documents from the certified medical records, hearsay or not, and the Trial Court accepted complete medical records in lieu of the piecemeal records prepared by Mr. Jackson.

Finally, Lines 293 and 294 were stricken because they are entries by Mr. Jackson and Mr. Braud for the preparation and review of a "bill of costs" which was never submitted to the Court.

The following entries, which are highlighted in yellow on the attached chart, were reduced by 95% to reflect the ratio pled by the Pliantiff in his Original Seaman's Complaint of the value of the Jones Act negligence an d unseaworthiness claims ($2,000,000) to the maintenance and cure claim ($100,000). Alternatively, the entries were reduced by two-thirds because the entries are not specific to the maintenance and cure claim, apply equally to all

17

three claims brought, and should be reduced to reflect that they reflect work done largely in pursuit of the Jones Act negligence and unseaworthiness claims which two claims made up at least two-thirds of this litigation:  Lines 1-6, 8, 14-18, 20, 22, 24-28, 37-41, 44, 46-49, 51, 52, 56-58, 60-61, 71, 87, 89, 95, 103, 105-108, 116, 119, 125, 127, 129-131, 134-136, 144-150, 154-160, 162-165, 168-170, 181-182, 187-190, 194-198, 212, 219-221, 224-225, 227-236, 238-239, 241-245, 249, 252, 254-255, 257-285, 290.

**V.    Conclusion.**

Considering the foregoing, the Defendant respectfully requests that the hourly rates of counsel for the Plaintiff be reduced to $250 per hour for Mr. Braud, $200 per hour for Ms. Gallagher, and $175 per hour for Mr. Jackson. Furthermore, the Defendant requests that time entries for tasks unrelated to the maintenance and cure claim and for clerical tasks that should have been performed by support staff be stricken.  Finally, the Defendant requests that time entries which are not specific to the maintenance and cure claim be reduced by ninety-five percent (95%) based on the damages sought by the Plaintiff in his Original Seaman's Complaint and Amended Seaman's Complaint, or alternatively by two-thirds to assume equal time was spent on each of the three claims brought by the Plaintiff and prosecuted through trial. When the foregoing adjustments are made, the total amount of attorneys' fees would be $*11,110.00* or $*22,977.50*.  Those totals are more reasonable than the amount requested by the Plaintiff not only because the billable rates and hours have been adjusted in accordance with market rates and applicable law

but because all of the attorney's fees to which the Plaintiff is entitled were incurred to collect the total amount of $7,680.00 in maintenance and cure.

Please note again that, via a separately filed Motion for Judgment as a Matter of Law or, alternatively, for a New Trial or Remittitur, Rec. Doc. 83, the Defendant challenges the Plaintiff's entitlement to punitive damages and attorneys' fees. The adjustments suggested herein should not be deemed a waiver of any argument made in the Defendant's pending Motion.

Respectfully submitted,

**MEEKS & ASSOCIATES, LLC**

s/*Phyllis E. Glazer*
**S. DANIEL MEEKS (#9407) (T.A.)**
**PHYLLIS E. GLAZER (#29878)**
3401 West Esplanade Avenue, South, Suite 3
Metairie, Louisiana 70002
Telephone: (504) 355-0020
Facsimile: (504) 355-0024
Email: DMeeks@MeeksLawLLC.com
PGlazer@MeeksLawLLC.com

## CERTIFICATE OF SERVICE

I certify that on February 27, 2018, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system which will provide a notice of electronic filing to all parties through their counsel of record. I further certify that all parties to this matter are represented by CM/ECF participants

*s/Phyllis E. Glazer*
**PHYLLIS E. GLAZER**