## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND DARDAR**<br><br>**VERSUS**<br><br>**T&C MARINE, LLC** | **CIVIL ACTION NO.:  16-13797**<br><br><br>**SECTION: "H"(2)**<br><br>**JUDGE JANE TRICHE MILAZZO**<br><br>**MAGISTRATE JUDGE**<br>**JOSEPH C. WILKINSON** |

### REPLY TO DEFENDANT T&C MARINE, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Plaintiff, Raymond Dardar, herein replies to Defendant's Opposition (R. Doc. 86) to his

Motion for Attorneys' Fees (R. Doc. 80). Defendant's Opposition does not sufficiently cast doubt

about the reasonableness of Plaintiff's lodestar calculation to warrant a reduction. Defendant's

Opposition includes subjects that are not at issue in Plaintiff's Motion seeking fees and attacks

that seem personal rather than legally based. If Defendant is upset related to the outcome of this

trial, Plaintiff acknowledges that this feeling is understandable, but attacks on Plaintiff's counsel

of a personal nature are unwarranted. This case has been litigated in a non-contentious fashion

other than differences related to procedural issues and the merits of the case, and such attacks are

misplaced because the outcome was dictated by the choices of Defendant and its counsel.

This case could have been resolved at the settlement conference on May 2, 2017.

Plaintiff traveled from his home in Tennessee, willing to resolve this case with maintenance and

cure as the primary issue. Up to that point, only Plaintiff's deposition had been taken and the

costs associated with litigating this matter were relatively low. Defendant, however, refused to

offer more than nuisance-level money (i.e., $5,000.00) to resolve the case. Plaintiff's costs in the case to that point were more than $5,000.00.

This case continued to develop as a maintenance and cure dominant case, and was presented as such at trial. There were seven total depositions taken in this case and five of them were of Plaintiff's treating medical providers. Only one of the seven depositions was taken prior to the settlement conference. The six other depositions, including several medical provider depositions that were conducted in Tennessee, were necessitated because of Defendant's refusal to make an offer that would even cover Plaintiff's costs.

Based on a successful prosecution of this maintenance and cure case, the jury found that attorneys' fees were warranted due to Defendant's willful and wanton failure to pay maintenance and cure. Defendant's Opposition to Plaintiff's Motion for fees does not sufficiently cast doubt as to the reasonableness of the request for fees such that a reduction is warranted. For the reasons herein, Defendant's objections should be overruled, Plaintiff's Motion should be granted and the attorneys' fees should be awarded as requested.

## I.    REASONABLENESS OF ATTORNEYS' RATES

Plaintiff provided ample evidence for this Court to determine that the rate requested for each of the named attorneys is reasonable. For each attorney, Plaintiff provided a declaration as to each attorney's education, practice and requested rate. Additionally, Plaintiff cited to a number of cases in the Eastern District that support the rates requested as reasonable rates within the prevailing market (i.e., New Orleans). Plaintiff cited to cases wherein attorneys with comparable experience were awarded rates almost identical to the rates requested by his counsel. Plaintiff's undersigned counsel chose reasonable rates that they would charge if they billed hourly, however, as maritime personal injury plaintiffs' attorneys, they do not customarily bill by the

hour. Contingency fee arrangements are the standard in this market, and it is highly uncommon in undersigned counsel's practice for a defendant to proceed to trial with an outstanding punitive damages claim related to maintenance and cure.

Defendant also makes two specific arguments that should be addressed. First, the manner in which Plaintiff's counsel assigned duties related to the legal work necessary to prosecute the case is not up for debate. Any of the three attorneys *could* have tried the case in its entirety, but undersigned counsel, as lead trial attorney, assigned tasks for case prosecution and trial preparation as the hourly log indicates. Who could have examined or cross-examined certain witnesses at trial is not for Defendant to determine; it is for Plaintiff's counsel to determine how the case will be prosecuted, and it is not unreasonable for an attorney other than the lead trial attorney to prepare for a particular witness so that other attorneys may perform other trial preparation assignments. Further, it would not be reasonable for the most senior attorneys on the case to expend hours preparing motions, memoranda and discovery. Braud & Gallagher, LLC, Plaintiff's counsel, is a three-attorney firm. In a clear exercise of billing judgment, Steven Jackson, the associate in undersigned counsel's firm, performed many of the drafting, editing and reviewing assignments. There is nothing unreasonable about this arrangement, in fact, it is the more reasonable way to structure assignments related to a case, especially if it may later become subject to a billing rather than a contingency arrangement.

Defendant's argument is off base in attempting to decrease the hourly rates requested based on the legal work performed. One of the three attorneys had to perform the legal work required to prosecute the case. This it is not a question that should go to determining the reasonableness of the attorney's rate; it is simply the reality of the firm's structure. Defendant makes no arguments that the amount of hours expended, based on the experience of the

attorneys, was unreasonable, which would have been a proper argument based on Defendant's objection.

Second, Defendant's argument that insurance adjusters that handle maritime claims are independent and have no interest in the outcome of a motion setting attorneys' fees in a maritime case lacks credibility. Insurance adjusters that handle maritime claims have an absolute interest in depressing rates of attorneys so that the companies for which they work pay out less in attorneys' fees to attorneys on both the plaintiff and defendant side. Additionally, both declarations indicate that the adjusters "fix" billing rates of attorneys retained to represent insureds of maritime insurance companies. (R. Doc. 86-1 at ¶ 8; R. Doc. 86-2 at ¶ 8.) This suggests that the rates indicated as reasonable by Defendant's declarants are these fixed rates that are negotiated and contracted by the insurance companies, which is not representative of the reasonable rate the attorneys would bill absent the contract. It does not take a great inferential leap to suggest that the desire for repeat business from insurance companies has an effect on the contracted rate. Further attesting to the unbelievable nature of this claim is that Shirley Bickford, one of the declarants, is the insurance adjuster assigned to the instant claim. (R. Doc. 86 at 6.) Ms. Bickford's interest is, understandably, to have rates be as low as possible so that her insurance company and/or her insured face the least amount of attorneys' fees possible to go along with the judgment that has already been entered.

Defendant has offered no arguments that legitimately call into question the reasonableness of the rates requested by Plaintiff's counsel. As such, the rates should be approved as requested.[1]

---

[1] Plaintiff has attached as an exhibit documentation from a recent CLE regarding attorney's fees in maintenance and cure cases. It addresses many of the standards at issue in Plaintiff's Motion, Defendant's Opposition and the instant Reply. *See* Ex. A, "Attorney's Fees in Maintenance and Cure Cases."

## II.      NUMBER OF HOURS BILLED

Plaintiff's Motion clearly indicates, on numerous occasions, that the request for attorneys' fees is based on the successful prosecution of the maintenance and cure claim. (R. Doc. 80 at 1; R. Doc. 80-1 at 1-2.) While the jurisprudence does not permit recovery for attorneys' fees related to a Jones Act claim and unseaworthiness, it has also recognized that these claims come from the same accident and naturally overlap with one another and often with maintenance and cure claims; these claims are intertwined. *Williams v. Kingston Shipping Co.*, 925 F.2d 721, 725 (4th Cir. 1991) (reasoning that these claims intertwine and overlap).

Plaintiff's case was litigated as a maintenance and cure case. Plaintiff made some arguments as to the Jones Act and unseaworthiness claims, but a reasonable review of the record reveals that this matter was prosecuted primarily as a maintenance and cure case. As these three claims are inextricably intertwined, Defendant's argument that some billing entries are purely Jones Act and/or unseaworthiness related entries is not so simple. For instance, Plaintiff retained Captain James P. Jamison as an expert, however, his impact was not limited to the Jones Act and unseaworthiness claims. Defendant's primary argument was that Plaintiff, in essence, committed fraud by claiming that his foot was slammed on the vessel when such was an impossibility. Captain Jamison's testimony, combating this "fraud" defense, was also evidence that supported Plaintiff's maintenance and cure claim because it touched on the possibility/viability of the accident as Plaintiff claimed it occurred.

Further, while Plaintiff does not believe any percentage reduction is warranted based on the billing entries presented to the Court, which clearly show a maintenance and cure dominated case with proper billing judgment exercised, any reduction the Court may ultimately deem necessary should not be based on either of Defendant's suggestions. The initial demand in the

Complaint had no bearing on what the jury awarded and offers no indication as to how the case was developed to trial and prosecuted at trial. *See Williams v. Kingston Shipping Co.*, 925 F.2d 721, 726 (4th Cir. 1991) (reversing trial court decision to reduce attorneys' fee request by 75% based on faulty belief that Jones Act, unseaworthiness and maintenance and cure claims are not intertwined and that such a reduction was necessary because plaintiff prevailed on less than all of the claims in his complaint). Also, a reduction based on Plaintiff's lack of success would be erroneous because he received an award for each aspect of his maintenance and cure claim, the claim for which attorneys' fees are sought, including compensatory damages and punitive damages.

Additionally, a review of the record clearly shows that this case was not prosecuted equally amongst the three claims. Plaintiff's counsel expended the vast majority most of its time in the lead up to trial attempting to convince Defendant that Plaintiff fell ill in the service of the ship, and the prosecution of the claims at trial reflected this as the case was presented to the jury as primarily a maintenance and cure case.[2] If this Court deems it necessary to make a percentage reduction to Plaintiff's fee request, the reduction should be based on the manner in which the case was prosecuted. *See Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1087 (3rd Cir. 1995) (affirming trial court's award of attorneys' fees, which was 90% of the lodestar calculation based on the trial court's review of the record and the amount of time expended prosecuting the maintenance and cure claim).

Plaintiff also offers the following responses to Defendant's assertion that certain lines/billing entries should be struck:

---

[2]  On the morning trial was set to begin, at the conclusion of a conference with the trial court before the jury was selected, the court indicated that it saw this case, based on filings and discussions with the parties, as a maintenance and cure case, which was in tune with Plaintiff's trial strategy.

- Lines 76-78, 83-84, 86, 98, 111-114, 120-123, 126, 128, 132 – Captain Jamison's testimony was integral in combating Defendant's "fraud" defense (i.e., that Plaintiff's foot could not have been slammed on the vessel in the manner he testified), which played a part in Plaintiff's maintenance and cure claim;

- Lines 117-118 – the de benne esse (i.e., perpetuation) depositions research was required because Defendant submitted a letter indicating that it believed medical perpetuation depositions were "late" and that it would "attempt" to be available for said depositions; Plaintiff's counsel then spent limited time researching and drafting a motion to schedule these depositions in case Defendant remained ambivalent and chose to object to said depositions occurring;

- Lines 176-180, 183-186 – Plaintiff's Motion in Limine (R. Doc. 46) was related to issues affecting all claims filed;

- Lines 50, 54-55, 59, 73, 74, 79-81 – Plaintiff's Amended Complaint was filed to correct a drafting error and the extension of deadlines was necessary in part because Defendant had not provided discovery responses and disclosures;

- Lines 97, 99-101 – a witness and exhibit list is necessary to have witnesses and exhibits for trial and Plaintiff's treating medical providers and medical records were included on said lists, which supported his maintenance and cure claim, and the exhibit list included any correspondence between the parties, which would include the maintenance and cure demand letters (R. Doc. 26 at 3);

- Lines 125 – this research was related to the Opposition (R. Doc. 36) to Defendant's Motion for Summary Judgment (R. Doc. 29), which sought to dismiss Plaintiff's case, not just his Jones Act and unseaworthiness claims, and the issues addressed affected his maintenance and cure claim as there were arguments regarding his injury and punitive damages;

- Line 175 – the applicability of the collateral source rule to a maintenance and cure claim was part of the research performed, regardless of the outcome of the research, it was legitimate time spent in furtherance of the motion ultimately filed – the law is not stagnant and a diligent legal practitioner always researches the present state of the law before taking a position;

- Lines 141-143 – these entries relate to work performed by Plaintiff based on documents received from Defendant, while deemed inadmissible at trial, they were reviewed at the time;

- Lines 161 and 167 – clerical support staff cannot determine what documents should or will be utilized at trial, it is for the attorneys to confirm the accuracy of the exhibits because we will be prosecuting the case;

- Line 237 – counsel submitted the exhibits with narrative reports (hearsay) excluded and provided them to Defendant for review and to print for delivery to the court; and

- Lines 293 and 294 – the bill of costs was filed with the Court (R. Doc. 87).

Based on the above responses, Plaintiff avers that none of these lines/billing entries should be struck as Defendant argues.

Defendant also includes a long list of lines/billing entries that it claims are not specific to Plaintiff's maintenance and cure claim. Defendant claims said entries should be reduced by 95% or two-thirds, but neither percentage has any bearing on how the case was prosecuted, which is the standard this Court should apply if a percentage reduction is performed. *See supra* p. 6. Plaintiff's case was pursued, overwhelmingly, as a maintenance and cure case, which is revealed by a review of the record. Further, Defendant lists a number of lines/billing entries that on their face were solely or overwhelmingly related to Plaintiff's maintenance and cure claim:  Lines 8, 47, 51, 57 (subpoena related to medical records), 116, 134-136, 147-150, 156-159, 168-169, 187-190 (Defendant's MIL and Motion to Strike – R. Doc. 44 - overwhelmingly dealt with Plaintiff's punitive damages claim related to his maintenance and cure claim and maintenance and cure demand letters), 229 (medical expert deposition transcripts were the subject), 242 (medical expert depositions), 244 (medical expert depositions), 254-255 (meeting regarding Defendant's medical expert), 262-266 (review of medical expert depositions), and 268 (preparation for Defendant's medical expert).

### III.     CONCLUSION

Plaintiff's counsel expended a substantial amount of time prosecuting his case, which was primarily pursued as a maintenance and cure case, to a successful conclusion. The evidence Plaintiff presented at trial was, overwhelmingly, related to his medical condition and geared at demonstrating that Defendant was unreasonable, arbitrary and capricious in its failure to pay

maintenance and cure to Plaintiff. The jury awarded Plaintiff maintenance, cure, compensatory damages and punitive damages, as well as attorneys' fees (which it found were warranted). Plaintiff avers that the work performed by his counsel had a successful result, the time expended was reasonable and the rates requested are reasonable based on their experience, efforts and the prevailing market rates. Defendant's objections do not sufficiently cast doubt as to the reasonableness of Plaintiff's request such that a reduction is warranted. As such, Plaintiff's Motion should be granted and fees should be awarded as requested.

Respectfully submitted:

**C. ARLEN BRAUD, II (#20719)**
**MICHELLE O. GALLAGHER (#23886)**
**STEVEN D. JACKSON (#35841)**
Braud & Gallagher, L.L.C.
111 N. Causeway Blvd, Ste. 201
Mandeville, LA 70448
Telephone:    (985) 778-0771
Facsimile:    (985) 231-4663
arlenb@braudandgallagher.com
michelleg@braudandgallagher.com
stevenj@braudandgallagher.com
**Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on this 6<u>th</u> day of March, 2018, I electronically filed the foregoing with the clerk of court by using the CM/ECF system which will send a notice of electronic filing to all counsel.

C. ARLEN BRAUD, II