UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYMOND DARDAR                                           CIVIL ACTION

VERSUS                                                   NO. 16-13797

T&C MARINE, L.L.C.                                       SECTION "H" (2)

FINDINGS AND RECOMMENDATION

Plaintiff, Raymond Dardar, a seaman, was employed by defendant, T & C Marine, L.L.C. ("T&C"), as captain onboard a vessel owned by T&C, when he suffered an injury aboard the vessel. A three-day jury trial resulted in a verdict that plaintiff had not been injured as a result of defendant's negligence or an unseaworthy vessel, but that T&C had unreasonably, willfully and wantonly failed to pay Dardar maintenance and cure. Record Doc. No. 75. The court entered judgment based on the jury's verdict in plaintiff's favor in the amounts of $4,180 for maintenance; $3,500 for cure; $72,500 in compensatory damages; and $20,000 in punitive damages. Record Doc. No. 78. Dardar's Motion to Set Attorneys' Fees, Record Doc. No. 80, has been referred to me for findings and recommendation. Record Doc. No. 82.

Plaintiff supports his motion with three declarations under penalty of perjury and an hourly log reflecting his attorneys' time spent on this matter. His original submissions sought $81,175.00 in fees for 279 hours of attorney time incurred up to entry of judgment and filing of his motion for attorney's fees.[1] Record Doc. No. 80 at p. 1. T & C Marine filed a memorandum in opposition,

---

[1] Plaintiff requests $81,015.00 in attorney's fees, but according to the numbers submitted in plaintiff's hourly log the true calculation is $81,175.00. Record Doc. No. 80; Hourly Log, Plaintiff's Exh. D., Record Doc. No. 80-5. The entry for attorney Jackson for 0.30 hours spent on 5/17/2017 drafting and editing a motion to extend the liability expert deadline should be for the total amount of $67.50, not the $7.50 listed. Hourly Log, Plaintiff's Exh. D, Record Doc. No. 80-5 at p. 4. In addition, Jackson's entry from 7/19/2017 for a 0.50 hour phone call with Jamison regarding a motion and response should result in a total amount of $112.50, not the listed $12.50. Id. at p. 5. With these two mathematical corrections, the total amount of attorney's fees sought by plaintiff increases from $81,015.00 to $81,175.00.

Record Doc. No. 86, and plaintiff received leave to file a reply memorandum. Record Doc. Nos. 88, 89, 90. In compliance with my order, Record Doc. No. 101, plaintiff filed a supplemental memorandum in support of his motion seeking an additional $6,692.50 for 23.80 hours of attorney time incurred on his motion for attorney's fees, bill of costs and opposition memorandum to defendant's motion for judgment as a matter of law. Record Doc. No. 103 at p. 1. Overall, therefore, he seeks a total of $87,867.50.[2] Id. at p. 2. Defendant timely filed a memorandum in opposition to plaintiff's supplemental memorandum. Record Doc. No. 104.

Having reviewed the written submissions of the parties, the record and the applicable law, and for the following reasons, I find and recommend that Dardar's motion should be GRANTED IN PART AND DENIED IN PART, in that he should be awarded the amount of $52,959.66 in reasonable attorney's fees.

## ANALYSIS

A.  Standards for an Award of Attorney's Fees

Plaintiff's claims are governed by maritime law. Armstrong v. Offshore Specialty Fabricators, No. 15-4027, 2017 WL 1375268, at *3 (E.D. La. Apr. 17, 2017) ("It is well-settled that '[a] shipowner who arbitrarily and capriciously denied maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees.'") (citing Breese v. AWI, Inc., 823 F.2d 100, 103 (5th Cir. 1987)) (quoting Yelverton v. Mobile Labs., Inc., 782 F.2d 555, 558 (5th Cir. 1986))). Defendant's memorandum in opposition to the motion clearly states that it "opposes only the amount requested." Record Doc. No. 86 at p. 1 (emphasis added). It does so purportedly

---

[2] Plaintiff's motion states that he seeks $87,707.50 overall, but the adjusted total of $81,175.00 plus $6,692.50 equals $87,867.50.

"[w]ithout waiving any argument why the Plaintiff is not entitled to recover any attorney's fees at all, . . . ." Id. I conclude, however, that given the jury's clear factual finding that T&C willfully and wantonly failed to pay maintenance and cure to such an extent that an award of punitive damages was warranted, Record Doc. No. 75 at p.6, Dardar, as the prevailing party, is entitled to recover attorney's fees for obtaining a jury verdict in his favor on his claim against T&C for its willful and wanton failure to provide maintenance and cure.

"'A fee award is governed by the same law that serves as the rule of decision for substantive issues in the case.'" Advanced Nano Coatings, Inc. v. Hanafin, 556 F. App'x 316, 320 (5th Cir. 2014) (quoting Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002)); accord Chevron USA, Inc. v. Aker Mar., Inc., 689 F.3d 497, 505 (5th Cir. 2012). Thus, federal law applies to the award of attorney's fees in this matter. Jambon & Assocs., L.L.C. v. Seamar Divers, Inc., No. 09-2670, 2009 WL 2175980, at *9 (E.D. La. July 20, 2009).

The lodestar method is routinely used to determine attorney's fee awards in federal civil actions, including actions brought under maritime law, and both parties use that method in their motion papers.

> The determination of a fees award is a two-step process. First the court calculates the "lodestar[,]" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)[, abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)].

Jimenez v. Wood Cty., 621 F.3d 372, 379-80 (5th Cir. 2010) (citations omitted).

"The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-

counting." Heidtman v. Cty. of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir. 1993)); accord Perdue v. Kenny A., 559 U.S. 542, 546 (2010).

> The Johnson factors are:
>
> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

Johnson, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted). Three of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. Heidtman, 171 F.3d at 1043 (quoting Pa. v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); Shipes, 987 F.2d at 319-22 & n.9); accord Perdue, 559 U.S. at 553. After Johnson was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. The Johnson factors are taken into account after the court has determined the lodestar amount. Walker v. U.S. Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996).

The Supreme Court recently reiterated that "there is a strong presumption that the lodestar is sufficient" and that "an increase is permitted [only] in extraordinary circumstances." Perdue, 559 U.S. at 546; accord Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 490 (5th Cir.

4

2012); Jimenez, 621 F.3d at 380. Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Std. Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (hereinafter "LP&L").

As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded. Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993). Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. Green v. Admin'rs of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63-64 (2006) (citing Walker, 99 F.3d at 769); accord Hensley, 461 U.S. at 433-34. The fee seeker's attorneys "are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006) (citation omitted).

"Moreover, the court need not explicitly calculate the lodestar to make a reasonable award." No Barriers, Inc. v. Brinker Chili's Tex., Inc., 262 F.3d 496, 501 (5th Cir. 2001) (citation omitted).

> The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). "If the district court has articulated and clearly applied the correct criteria, [the appeals court] will not require the trial court's findings to be so

excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." In re High Sulfur Content Gas. Prods. Liab. Litig., 517 F.3d 220, 228-29 (5th Cir. 2008) (quotations and citations omitted).

> B. Whether the Claims That Were Tried Can Be Segregated for Purposes of Awarding Attorney's Fees

Before calculating the lodestar, I consider whether Dardar can recover for all of the time that his attorneys spent working on the case because, as he argues, the work done on the Jones Act negligence and unseaworthiness claims, as to which he was unsuccessful, is incapable of being segregated from the maintenance and cure claim.

Three historically and legally related claims were tried to the jury: negligence under the Jones Act, together with unseaworthiness and maintenance and cure under general maritime law. Record Doc. Nos. 45 and 75. Dardar contends that this case "was litigated as a maintenance and cure case" primarily, with only "some arguments as to the Jones Act and unseaworthiness claims." Record Doc. No. 90 at p.5. Dardar argues that all three claims "are inextricably intertwined," such that he should be awarded all requested fees. Id.

Defendant argues that any billing entries included in plaintiff's hourly log that were not specific to the maintenance and cure claim should be stricken, or the court should apply a reduction of either 95% – to reflect plaintiff's valuation of his maintenance and cure claim at $100,000 and his Jones Act negligence and unseaworthiness claims at $2 million – or two-thirds (67%) – to reflect the fact that plaintiff's maintenance and cure claim was one of three claims litigated. Record Doc. No. 86 at pp. 17-18.

"A court need not segregate fees when the facts and issues are so closely interwoven" that the time spent on separate claims or against separate defendants cannot reasonably be divided. Mota

v. Univ. of Tex., 261 F.3d 512, 528 (5th Cir. 2001) (citing Abell v. Potomac Ins. Co., 946 F.2d 1160, 1169 (5th Cir. 1991)). The question in this case is whether the claims and facts were so closely interwoven that plaintiff should recover all of his attorney's fees. The court must ask whether the "losing claims," i.e., the two claims as to which plaintiff is not entitled to recover any fees, "included 'a common core of facts' or were 'based on related legal theories' linking them to the successful claim." Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992) (quoting Hensley, 461 U.S. at 435); accord Brady v. Fort Bend Cty., 145 F.3d 691, 717 (5th Cir. 1998); LP&L, 50 F.3d at 327. If the answer to this inquiry is "yes," then the prevailing party may recover for the fees reasonably incurred in pursuing or defending against the intertwined claims. Id.

In the instant case, plaintiff's maintenance and cure claim shared a substantial common core of facts with his Jones Act negligence and unseaworthiness claims, but not to the full extent of the case in its entirety. The distinction and difference among Dardar's three claims begins with the legal standards.

> A seaman may recover damages under the Jones Act if his employer's negligence was the legal cause, in whole or in part, of his injury. At trial, [plaintiff] must establish that [defendant] had a duty to provide a reasonably safe place to work, [defendant] breached that duty, and [defendant's] negligence caused his injuries.

Lee v. Offshore Logistical & Transps., LLC., No. 15-2528, 2017 WL 650941, at *2 (E.D. La. Dec. 21, 2017) (citing Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (emphasis added)). Unseaworthiness, on the other hand, "is not a fault-based standard; a plaintiff must show, however, that the unseaworthy condition 'played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.'" Fluker v. Manson Gulf, LLC, 193 F.Supp.3d 668, 675 (E.D. La. 2016) (citing Phillips v. W. Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992) (emphasis added)). In

7

contrast, "an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent'" and without reference to any tie to an unseaworthy condition. Thomas v. Hercules Offshore Servs., L.L.C., 713 F. App'x 382, 386 (5th Cir. 2018) (quoting Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1012 (5th Cir. 1994)).

Dardar's three claims differ in some ways and overlap in others in terms of evidentiary proof. For example, evidence of the condition of the door that plaintiff alleged caused his foot injury would be used to prove unseaworthiness as it relates to the door's operation, use and design. The reasonableness of the conduct of the plaintiff and/or defendant and the scope of their duties would be used to prove negligence, but not maintenance and cure. Certainly, Dardar's presentation of evidence concerning background facts pertaining to his injury, physical condition and medical treatment would be relevant to all three claims, including proof of defendant's failure to pay maintenance and cure.

I find that the factual overlap among the three claims in plaintiff's case is substantial, but not complete. The nature of the foot injury on May 23, 2016, in an incident involving a door aboard the vessel; whether it exacerbated or was exacerbated by his pre-existing Peripheral Arterial Disease ("PAD"); and the resulting surgery performed by Dr. Timmothy Powell dominated the trial presentation and pretrial preparation and were related to all three claims.

Given the difference in legal standards and evidentiary proof between these three claims, I cannot accept plaintiff's argument that he is entitled to 100% of his billed fees. Plaintiff cannot

8

recover attorneys fees for his unsuccessful Jones Act or unseaworthiness claims.[3] Although I have thoroughly reviewed plaintiff's fee invoices, a line item review in this opinion would be extremely time consuming and fruitless in trying to segregate reasonably the time that plaintiff's counsel spent on each claim. I recognize that many tasks, such as preparing or responding to discovery requests or litigating the case at trial, necessarily encompassed all or most of plaintiff's claims. The difficulty in this instance is that so much of the billed time was broadly described in plaintiff's counsel's submissions in an unsegregated way.

"Where it would be an exercise in futility to separate out the legal services rendered for each claim, the fee should simply be determined as a function of degree of success." Lipsett, 975 F.2d at 940-41. The district court "need not explicitly calculate the lodestar to make a reasonable award" and has the discretion to award "only a small fraction of the amount requested" when attorney's fees are due only for a portion of the litigation, provided that the documentation of fees is adequate. No Barriers, Inc., 262 F.3d at 500-01 (citing Wegner v. Standard Ins. Co., 129 F.3d 814, 822-23 (5th Cir. 1997)). Thus, it is appropriate to make a percentage reduction in Dardar's fee request to reflect his entitlement to fees on the maintenance and cure claim only. Pruett v. Harris Cty. Bail Bond Bd., 499 F.3d 403, 418 (5th Cir. 2007) (citing Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-90 (1989)); Fine v. Ryan Int'l Airlines, 305 F.3d 746, 757 (7th Cir. 2002) (citing Hensley, 461 U.S. at 435); Jason D.W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 211 (5th Cir. 1998); Rendon v. AT&T Tech., 883 F.2d 388, 399 (5th Cir. 1989). To account, however, for the

---

[3] This case is distinguishable from Williams v. Kingston Shipping Co., 925 F.2d 721, 725 (4th Cir. 1991), which plaintiff cited in support of his argument that he is entitled to 100% of his billed fees. The appeals court in Williams found that the district court improperly reduced its initial attorney's fee award, which was calculated in consideration of the fact that plaintiff prevailed on only 25% of his overall complaint, by an additional 75%. In the instant case, a reduction is being applied to plaintiff's initial award.

9

substantial overlap of the three claims, I will reduce plaintiff's requested attorney's fee amount for work performed through trial only by 33%, together with certain additional deductions, as described in the following sections.

        C.        <u>The Requested Hourly Rates Are Reasonable</u>

Dardar seeks hourly rates of $350 for his lead counsel, C. Arlen Braud, and for Braud's partner, Michelle Gallagher, and $225 for associate attorney Steven Jackson. An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. <u>LP&L</u>, 50 F.3d at 329. In the instant case, defendant contests the reasonableness of the rates requested by plaintiff's counsel and argues that the hourly rates should be reduced to $250 for Braud, $200 for Gallagher and $175 for Jackson. Record Doc. No. 86 at p. 4.

Braud states in his declaration that he has practiced law for 27 years, with 25 years of experience in maritime and Jones Act law, and he is a named partner in the firm Braud & Gallagher, LLC. Defendant's Exh. A, Record Doc. No. 80-2. Gallagher declares in her declaration that she has practiced in Louisiana for 23 years and has 18 years of experience in maritime and Jones Act law. Defendant's Exh. B, Record Doc. No. 80-3. She is also a named partner in the firm Braud & Gallagher, LLC. <u>Id.</u> Jackson states in his declaration that he has seven years of legal experience and has been practicing in the area of maritime law for two years. Defendant's Exh. C, Record Doc. No. 80-4.

Considering the case law in this district, and being fully familiar with the depth of experience and expertise of Braud and Gallagher in this kind of case based upon their numerous appearances before me during the past 23 years, I find that the requested hourly rates are reasonable and fall well

10

within the broad range of prevailing market rates for attorneys of comparable skill and experience in litigation of this type in the New Orleans legal market. See Mr. Mudbug, Inc. v. Bloomin' Brands, Inc., No. 15-5265, 2017 WL 736044, at *2 (E.D. La. Feb. 24, 2017), aff'd, 2017 WL 2274954 (E.D. La. May 25, 2017) (using lodestar method for discovery sanction and awarding hourly rates of $300, $240, $210 and $190 for attorneys with 17, 10, 4 and 1 years of experience, respectively); Norris v. Causey, No. 14-1598, 2016 WL 1046101, at *9 (E.D. La. Mar. 16, 2016) (finding rates of $250, $200, and $150 were reasonable for attorneys with 31, 12 and 8 years of experience respectively); Jefferson v. Baywater Drilling, LLC, No. 14-1711, 2015 WL 7281612, at *1 (E.D. La. Nov. 17, 2015) (affirming magistrate judge's report and recommendation finding that rates of $500 and $450 per hour were reasonable for two attorneys with 40 years of experience in maritime litigation and that $240 per hour was reasonable for an attorney with 7 years' experience in maritime litigation); Adams v. City of New Orleans, No. 13-6779, 2015 WL 4606223, at *3 (E.D. La. July 30, 2015) (rate of $350 per hour found reasonable for an attorney with 29 years of experience); Guity v. Lawson Envtl. Serv., LLC, No. 11-2506, 2014 WL 4723295, at *6-8 (E.D. La. Sept. 23, 2014) (approving hourly rate of $290 per hour for partner with over 30 years of experience in the field of law at issue); Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC, No. 10-4151, 2014 WL 5039670, at *8 (E.D. La. Sept. 25, 2014) (affirming the magistrate judge's report and recommendation finding that $325 an hour, $275 an hour and $225 an hour were reasonable rates for attorneys with 19, 7 and 4 years of experience, respectively); Foley v. SAFG Ret. Servs., Inc., No. 10-2827, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (rates of $350 per hour for attorney with 30 years' experience and $275 per hour for attorney with 8 years' experience were reasonable); Constr. S., Inc. v. Jenkins, No. 11-1201, 2011 WL 3882271, at *2 (E.D. La. July

29, 2011) (reducing hourly rates from $415 to $350 per hour for partner with 30 years' experience; from $395 to $350 per hour for partner with 36 years' experience; from $225 to $200 per hour for associate with nearly 4 years' experience; and from $210 to $180 per hour for associate with nearly 2 years' experience); Atel Maritime Investors, LP v. Sea Mar Mgmt., LLC, No. 08-1700, 2011 WL 2550505, at *3 (E.D. La. June 27, 2011) (reducing hourly rate from $300 to $250 per hour for partner with 35 years of experience in maritime law; $275 to $250 per hour for partner with 11 years of experience in maritime litigation; and $185 to $175 per hour for associate with 2 years of experience in maritime litigation).

Accordingly, I will apply the reasonable rates of $350 per hour for partners Braud and Gallagher and $225 for associate Jackson at the first step of the lodestar calculation.

D. <u>The Reasonable Hours Expended</u>

Next, I must determine the reasonable number of hours expended by Dardar's counsel on this litigation. I find that the attorneys' time is generally well documented. For the reasons discussed below, however, I find that the time expended by plaintiff's attorneys must be divided into two distinct components and evaluated separately.

(1) <u>Time Incurred up to Entry of Judgment</u>

The first component of time incurred consists of the hours expended from the outset of the litigation through the court's entry of judgment, based on the jury's verdict, on January 25, 2018. Record Doc. No. 78. These are the hours spent on the substantive portion of the case <u>relating to all three claims</u>, including client consultation, investigation, pleading, disclosures, settlement negotiations, trial preparation and the trial. This time is reflected in plaintiff's submissions at Record Doc. No. 80-5.

12

    a. <u>The requested hours and fees</u>

  The requested number of hours, billing rates and fees incurred in this matter, through entry of judgment and without including any time covering submission of the motion for attorney's fees, which is discussed below, as reflected in the evidence, are summarized as follows:

| Timekeeper | Requested Hours | Hourly Rate | Requested Fees |
|---|---|---|---|
| Arlen Braud | 124.30 | $350 | $43,505.00 |
| Michelle Gallagher | 21.90 | $350 | $7,665.00 |
| Steven Jackson | 126.80 | $225 | $28,530.00 |
| TOTAL | 273.00 | | $79,700.00 |

Braud declaration, Plaintiff's Exh. A, Record Doc. No. 80-2; Hourly Log, Plaintiff's Exh. D, Record Doc. No. 80-5. Plaintiff, in his original motion for attorney's fees, submitted an hours log detailing 279 hours that his attorneys worked from August 9, 2016 to February 7, 2018. Record Doc. No. 80-5. In evaluating the reasonable hours expended up to entry of judgment, I have subtracted the six (6) hours that Braud, Gallagher and Jackson spent from February 5 to February 7, 2018, after entry of judgment, from the originally submitted 279 hours. I have added those six hours to the 23.80 hours of time plaintiff's counsel expended <u>after</u> entry of judgment, as discussed below.

    b. <u>Billing judgment</u>

  Braud asserts in his declaration that his firm reduced the hours billed for meetings and document review to one attorney participant and that the firm did not include every telephone call, e-mail or meeting in the submitted itemization. Plaintiff's Exh. A, Record Doc. No. 80-2 at ¶ 7.

  "The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient." <u>Fralick v. Plumbers & Pipefitters Nat'l Pension Fund</u>, No. 3:09-CV-0752-D, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011) (citing <u>Saizan</u>, 448 F.3d at 800; <u>Hopwood v. Tex.</u>, 236 F.3d 256, 279 (5th Cir. 2000)); <u>accord</u> <u>Innovention Toys, LLC v. MGA</u>

Entm't, Inc., No. 07-6510, 2014 WL 1276346, at *4 (E.D. La. Mar. 27, 2014) (citing Saizan, 448 F.3d at 799); Abner v. Kan. City S. Ry., No. 03-0765, 2007 WL 1805782, at *2 (W.D. La. June 21, 2007), aff'd, 541 F.3d 372 (5th Cir. 2008). Braud has provided no comparison of the hours actually worked to the hours written off and thus has not established by competent evidence that its counsel fully wrote off all unproductive, excessive or redundant hours. Green, 284 F.3d at 662; Innovention Toys, 2014 WL 1276346, at *4. In addition, as noted above, plaintiff's attorneys' billing records present difficulties indicating lack of complete billing judgment in that so much of the billed time is so broadly described in the evidentiary submissions.

The remedy for absence of billing judgment "is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." Walker, 99 F.3d at 770 (reducing fee award by 15% for lack of billing judgment); see also Saizan, 448 F.3d at 800 (10% reduction for vagueness, duplicative work and lack of billing judgment); Hopwood, 236 F.3d at 279 (25% reduction based on inadequate time entries, duplicative work product and lack of billing judgment); Carroll v. Sanderson Farms, Inc., No. H-10-3108, 2014 WL 549380, at *23 (S.D. Tex. Feb. 11, 2014) (50% reduction when counsel failed to demonstrate billing judgment, majority of entries were vague and it was unclear whether fees were for clerical or legal work); Cole v. Orleans Par. Sheriff's Ofc., No. 11-2211, 2013 WL 5557416, at *4 (E.D. La. Oct. 8, 2013) (50% reduction for failure to exercise billing judgment); Preston Expl. Co. v. GSP, LLC, No. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) ("Courts have reduced fees up to 50% for billing judgment . . . ;" reducing hours by 20% because (a) partners performed tasks more suited to associates or paralegals; (b) attorneys and paralegals billed for clerical tasks; (c) attorneys billed regular rates for unproductive travel time; (d) many billing entries were vague; and (e) case was

overstaffed with partners who often duplicated each other's efforts) (citing Saizan, 448 F.3d at 800; LP&L, 50 F.3d at 336; Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC, No. H-10-1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (50% reduction); Devices, Inc. v. Sr. Operations, Inc., No. 3-08-CV-1264-BD, 2009 WL 5171746, at *1 (N.D. Tex. Dec. 29, 2009) (20% reduction)); Yelton v. PHI Inc., No. 09-3144, 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012) (50% reduction).

Time entries that reveal vague descriptions and redundant, clerical and duplicative work are included within the billing judgment calculation. Hours spent in duplicative activity or in the passive role of an observer while other attorneys perform are generally not recoverable. Coleman v. Houston Indep. Sch. Dist., 202 F.3d 264, 1999 WL 1131554, at *6 (5th Cir. 1999). My review of the hourly log confirms some duplicative work by plaintiff's attorneys, warranting a decrease in the fee award, most notably during the three day jury trial conducted in this case. During the trial, Braud was the lead attorney, Gallagher cross-examined one witness and Jackson merely observed. Record Doc. No. 86 at pp. 4-5. Examples of redundant hours include six entries by Braud on February 10, 15 and 17, September 12 and 26 and October 4, 2017 entitled "review letter to defense re institution of M&C."

Plaintiff's fee submissions contain some clerical tasks, including, for example: April 20, 2017, "note to file re depos needed for case;" June 15, 2017, "review invoice and approve payment for Jamison;" July 26, 2017, "cancel depo;" August 9 and 10, 2017, "organize and bates stamp trial exhibits." Plaintiff's Exh. D, Record Doc. No. 80-5 at pp. 3-6. "Purely clerical tasks should not be billed at an attorney's rate, regardless of who performs them." Knight v. Barnhart, No. 02-1741, 2003 WL 21467533, at *2 (E.D. La. June 20, 2003).

15

The time entries are generally well documented, but a few entries are too vague to permit meaningful review, including, for example: September 1, 2016, "telephone call with D. Meeks;" December 21, 2016, "phone call with client;" January 21, 2018, "preparation for jury trial;" January 22, 2018, "preparation for trial." See Walker, 99 F.3d at 773 (rejecting fee request that contained "terse listings" such as " 'library research,' 'analyzing documents,' 'reading background documents,' 'phone interviews,' with no further explanation.... [N]o responsible client would accept these records as capable of supporting a bill."); accord LP & L, 50 F.3d at 326 n. 11; Von Clark v. Butler, 916 F.2d 255, 259 & n. 6 (5th Cir.1990) (entries such as "'telephone call,' or 'trial preparation,' or 'travel to Beaumont to attend deposition' without any identification whatsoever of the subject matter" are "scanty and lacking in explanatory detail"); see also Saizan, 448 F.3d at 800 (affirming reduction in attorney's fees for vagueness, duplicative work and lack of billing judgment in time records); Walker v. City of Mesquite, 313 F.3d 246, 252 & n. 4 (5th Cir. 2002).

"As the Supreme Court has said, 'the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" Ceres Envtl. Servs., Inc. v. Col. McCrary Trucking, LLC, 476 F. App'x 198, 203-04 (11th Cir. 2012) (quoting Hensley, 461 U.S. at 437); accord Fox, 131 S. Ct. at 2216.

I recommend reducing the remaining hours and fees by 15% to account for these billing deficiencies. When these reductions in the exercise of billing judgment are applied to the aforementioned reasonable rates, the result is as follows:

| Timekeeper | Requested Hours | Hourly Rate | Requested Fees |
|---|---|---|---|
| Arlen Braud | 124.30 | $350 | $43,505.00 |
| Michelle Gallagher | 21.90 | $350 | $7,665.00 |

16

| | | | |
|---|---|---|---|
| Steven Jackson | 126.80 | $225 | $28,530.00 |

---

| | | |
|---|---|---|
| TOTAL | | $79,700.00 |
| Reduced by 15% | | $67,745.00 |

I further reduce that amount by 33.3 % to account for the fact that plaintiff may recover fees only on his failure to pay maintenance and cure claim, which was just one of three claims that were prepared and tried, but which also shared a substantial amount of overlap with the unsuccessful Jones Act and unseaworthiness claims. Therefore, after reducing $67,745.00 by 33.3% ($67,745.00 - $22,559.09), the resultant recoverable attorney's fee for time incurred through trial is $45,185.91.

    (2)    <u>Time Incurred After Entry of Judgment</u>

        a.    <u>The requested hours and fees</u>

The second aspect of plaintiff counsel's request – researching and preparing the motion for an attorney's fees award, drafting a bill of costs and researching, preparing and litigating the opposition memorandum to defendant's motion for judgment as a matter of law – is in substantial part reasonable and almost entirely warranted by the evidence. The requested number of hours, billing rates and fees incurred in this matter after entry of judgment, as reflected in the evidence, are summarized as follows:

| Timekeeper | Requested Hours | Hourly Rate | Requested Fees |
|---|---|---|---|
| Arlen Braud | 11.50 | $350 | $4,025.00 |
| Michelle Gallagher | 0.20 | $350 | $70.00 |
| Steven Jackson | 18.10 | $225 | $4,072.50 |
| TOTAL | 29.80 | | $8,167.50 |

As previously discussed, I added six (6) hours to the 23.80 hours documented in plaintiff's supplemental hours log, Record Doc. No. 103-3, to address the 29.80 hours plaintiff's counsel expended <u>after</u> entry of judgment. Unlike the portion of the fee request addressed above, <u>all</u> of this

17

work relates to the maintenance and cure claim, which was all that remained of the case after the jury's verdict. Thus, no reduction by any percentage to account for the two unsuccessful claims is necessary here.

### b. Billing judgment

The post-trial time entries are generally well documented, but a few entries are too vague to permit meaningful review, including, for example: March 7, 10 and 12, 2018, "research re Def. Mot. for Judgment;" March 13, 2018, "research re opp. to Def. Mot. for Judgment." See Walker v. City of Mesquite, 313 F.3d 246, 252 & n.4 (5th Cir. 2002) ("Of course, not every entry is equally specific, and the district court has broad discretion to exclude or reduce the entries that are vague," such as "research regarding" and "research legal issues."); Von Clark v. Butler, 916 F.2d 255, 259 & n. 6 (5th Cir.1990) (entries such as "'telephone call,' or 'trial preparation,' or 'travel to Beaumont to attend deposition' without any identification whatsoever of the subject matter" are "scanty and lacking in explanatory detail"). I find that the 3.5 hours Jackson spent on "research re (opp. to) Def. Mot. for Judgment" should be reduced by 50% because the entry is vague as to what exactly Jackson researched.

After these few reductions are applied to the aforementioned reasonable rates, the following amount will be awarded in attorney's fees for plaintiff counsel's work, after entry of judgment, on plaintiff's motion for attorney's fees, bill of costs and opposition memorandum to defendant's motion for judgment as a matter of law:

| Billing Professional | Time for Fee/Costs Motion | Hourly Rate | Total for Fees: Time (x) Rate |
|---|---|---|---|
| Arlen Braud | 11.50 | $350 | $4,025.00 |
| Michelle Gallagher | 0.20 | $350 | $70.00 |
| Steven Jackson | 16.35 | $225 | $3,678.75 |
| | | Total: | $7,773.75 |

(3) <u>Summary</u>

Based on the foregoing findings, I conclude that when the total attorney's fees set out above are added together, the two numbers yield the following awardable amount:

| | |
|---|---|
| Total Fees Incurred up to Entry of Judgment: | $45,185.91 |
| Total Post-Trial Fees: | $7,773.75 |
| Total Lodestar: | $52,959.66 |

Neither side in the instant matter argues for any enhancement or reduction of the lodestar amount by any of the <u>Johnson</u> factors. After eliminating the <u>Johnson</u> factors that are subsumed in the lodestar or prohibited from consideration, the following four factors remain for adjustment analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. The customary rates have already been evaluated in establishing a reasonable hourly rate. Although the declarations do not provide any detail about the nature and length of the attorneys' professional relationship with Dardar, the relationship is of minimal importance in this overall context. The case was not undesirable. Awards in similar cases have already been taken into account in establishing the hourly rates.

CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendant pay to Dardar $52,959.66 in reasonable attorney's fees.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ___3rd___ day of May, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.